THE STATE, WASHINGTON B. WILLIAMS, RECEIVER OF THE WEST SHORE AND ONTARIO TERMINAL COMPANY, PROSECUTORS v. EDWARD BETTLE, ET AL., STATE BOARD OF ASSESSORS.

1. The West Shore and Ontario Terminal Company is a railroad corporation and liable to be taxed under the "Act for taxation of railroad and canal property," approved April 10th, 1884.
2. Debts cannot be deducted from the valuation of the property by the state board of assessors unless applied for under the twenty-first section of said act.
3. In the absence of proof the court will not interfere with the valuation of the franchise by the state board of assessors made at the taxing date.
4. Where property has been returned to the state board as used for railroad purposes, and has escaped local taxation, it is too late to claim exemption from valuation by such board.
5. The state board of assessors, in the valuation of property, must give its true value, and not be governed by the valuation of the local assessors.
6. Section 12 of the railroad tax law of 1884 construed.
7. Where the prosecutors claim and establish the right of deduction under section 12, such deduction must be made from the local tax and not from the state tax of one-half of one per cent.
8. By the act of 1884 the legislature did not intend, in any event, to diminish the revenue of the state by reducing the tax of one-half of one per cent.

On *certiorari.*

Argued at June Term, 1887, before Justices VAN SYCKEL, MAGIE and PARKER.

For the prosecutor, *Vredenburgh & Garretson.*

For the defendants, *J. P. Stockton, Attorney-General; B. Gummere* and *Wm. S. Gummere.*

The opinion of the court was delivered by

PARKER, J.　This writ of *certiorari* brings before the court the action of the state board of assessors in assessing the property of the West Shore and Ontario Terminal Company for the year 1885. Among the reasons urged for setting aside the assessment is that said company is not a railroad corporation, and therefore not liable to be taxed under the "Act for taxation of railroad and canal property," approved April 10th, 1884.

The Open Cut and General Storehouse Company, the corporate name of which was subsequently changed to the West Shore and Ontario Terminal Company, was created by the consolidation of the National Stock Yard Company, the Midland Terminal and Ferry Company and the Open Cut and General Storehouse Company.

This consolidation was effected under an act entitled "An act relating to the consolidation of corporations authorized to establish storehouses, piers or docks, or to maintain yards and buildings for the keeping and accommodation of live stock," approved March 23d, 1883. The first section of that act provides that it shall be lawful for such corporations to consolidate and merge their corporate rights, franchises, powers and privileges into any one of said corporations, so that by virtue of said act such corporations should be consolidated and merged, and, also, so that all the property, rights, franchises and privileges by law vested in such corporations should be transferred to and vested in the corporation into which such consolidation and merger should be made. The succeeding sections of said act provide for the mode of effecting such consolidation and merger. The fourth section enacts that upon filing a certificate and copy of the agreement provided for in the preceding sections, in the office of the secretary of state, the merger should be deemed to have taken place and the said corporations be one corporation, possessing all the rights, privileges and franchises *theretofore vested in either of them*. It follows that if either of the said corporations which by consolidation and merger went to constitute the Open

Cut and General Storehouse Company, possessed at the time of such consolidation and merger the rights, privileges and franchises of a railroad corporation, such rights, privileges and franchises, by the consolidation and merger, after such agreement filed, were transferred to the new corporation.

Upon reference to the act whereby the name of the Weehawken Transportation Company is changed to the Midland Terminal and Ferry Company, it is found that the last-named corporation was authorized to improve all or any part of its lands, by constructing therefrom and thereon, and over the lands of others, a railroad or railroads, to intersect with the railroad or railroads then built belonging to the Montclair Railway Company, the New Jersey Midland Railway Company, and the Ridgfield Railroad Company, within the limits of the county of Hudson, north of the railroads of the New Jersey Railroad and Transportation Company, east of the Hackensack river and west of Bergen Hill, so as to connect with any or all the railroads above mentioned, and with any other railroad or railroads then built, or which might thereafter be built. The said The Midland Terminal and Ferry Company was also by said last-named act given power to survey, lay out and construct a railroad or railroads. In short, said company was invested with all the rights, privileges and franchises of a railroad corporation, including the power of eminent domain.

By the consolidation and merger, all the aforesaid powers were transferred to and vested in the Open Cut and General Storehouse Company, and subsequently, when the name of that corporation was legally changed, passed to the West Shore and Ontario Terminal Company."

It also appears by the proof that the property of the West Shore and Ontario Terminal Company valued for taxation by the state board of assessors, had been, and was at the time of the valuation and assessment, used for railroad purposes.

It is clear, therefore, that the West Shore and Ontario Terminal Company was, at the time of the assessment, a railroad corporation, and that its property assessed by the state

board of assessors for the year 1885 was liable to taxation under the railroad tax law of 1884.

Another reason alleged why the assessment should be set aside is that neither the secured nor unsecured. debts were deducted from the valuation of the property by the board of state assessors.

The railroad tax law of 1884 provides that no deduction, either for mortgage or other indebtedness, shall be allowed, unless such deduction be applied for in the statement required to be made by the companies in the twenty-first section of said law. It appears that no claim for deduction was made under that section, nor in any other way.

It is also alleged that the valuation of the property on which the assessment was predicated was excessive. The proofs taken under this head relate to the valuation of the franchise, and of certain structures which will hereafter be mentioned. As to all the other property, there not being any testimony on the subject, the valuation made by the state board of assessors will stand.

The important question raised under the head of excessive valuation relates to the franchise. It is said that in making the valuation of the franchise, the board did not take into account the value of certain property of the company in the State of New York.

The testimony in reference to that property and its value relates to the date of January, 1887, which is two years after the time when the state board of assessors made the valuation on which the assessment in this case is based. There is no evidence showing what property, if any, the said company held in the State of New York, or the value thereof, in January, 1885, being the taxing date. The court cannot, in the absence of proof, interfere with the valuation of the franchise by the state board of assessors. There is no proof by which the court can determine that the valuation of the franchise by the state board, in January, 1885, was excessive, and therefore the valuation will not be changed.

Certain property is claimed to be exempt because, as alleged,

it was within the main stem of the railroad, the main stem having also been assessed as such. No proof was given to show that such property was within the one hundred feet taxed as main stem, nor was there any evidence showing that the valuation was excessive, and therefore the court will not disturb the assessment on the value of such property.

Objection is made to the valuation of a bridge. It was part of the property, the construction of which was necessary to the use of the railroad. In the case of *Central Railroad Company* v. *State*, 20 *Vroom* 1, bridges were considered in the valuation.

As to the other property claimed to be exempt because not used, as alleged, for railroad purposes, it is sufficient to remark that such property was returned to the state board as used for railroad purposes, thus escaping local taxation, and after such return it was too late to claim exemption. Nor does the proof show that the valuation of such property was excessive.

The evidence sustains the valuation placed on four of the ferryboats, but the valuation of the other boat should be reduced from $25,000 to $15,000.

Another reason urged with much tenacity to set aside the assessment is the claim that the real estate, other than main stem, is assessed at a relatively higher value than the real estate of individuals in the same taxing districts. If this be so it is in violation of the railroad tax law of 1884, and the valuation should be reduced. This claim is based upon the assessments made by the local assessors, but the testimony shows that their valuations were less than the true value. In the case before cited the court held that the state board of assessors, in their valuation of property, are not necessarily to be governed by the valuations made by local assessors in the same taxing district.

The state board of assessors are to take true value as the standard, and not discount from their estimation of true value because of the custom of local assessors to value property for taxation at less than its true value. It is not shown that the

state board of assessors valued and assessed the lands of this company above its true value or above the true value of lands of individuals in the same taxing district.

The remaining objection, and the one chiefly relied upon to set aside the assessment or lessen the amount of tax, involves the construction of section 12 of the railroad tax law of 1884. The clause of that section which is invoked reads as follows, viz.: "That if said board, upon complaint of any company, shall in any case ascertain that the addition of the state tax of one-half of one per cent. to the local rate, as limited in this act, would compel any company to pay more tax than the tax such company would pay if such company did not pay the state tax of one-half of one per cent., but did pay full local rates on all the property and franchises mentioned in section 3, without any other exemption than such as would be allowed to an individual citizen on such property, that then and in such case the said board shall make such reduction as will make the tax equal to the amount that such company would pay upon all the property and franchises mentioned in section 3, if assessed at full local rates, without any state tax of one-half of one per cent., the board, for the purpose of ascertaining the amount, but for no other purpose, to be authorized to apportion the value of the franchise among the local taxing districts."

The complaint of the company in this case, as set forth in writing filed with the state board of assessors, is that the addition of the state tax of half of one per cent. to the local rate, as limited by the act of 1884, would compel it to pay more tax than it would pay if it paid only full local rates on all its property and franchises mentioned in section 3 of said act, and did not pay the state tax. Therefore it requested the state board of assessors to make such deduction as would make the tax on its property equal to the amount it would pay if it paid full local rates on all its property and franchises without the state tax of one-half of one per cent.

Do the facts sustain the complaint in whole or in part?

Has there been over-taxation of the property in question in any respect?

The property of the company was found in two taxing districts, viz., the township of Union, in the county of Hudson, and the township of Weehawken, in the same county.

The valuation by the state board of assessors of all the property in the township of Union for the year 1885 was $2,312,386. The total amount of tax to be raised in that township in the year 1885 for local purposes was $6671. A rate less than thirty cents on $100, on above valuation of all the property in the township, would produce the local tax required. The value of the property of the company in said township of Union, as assessed by the board, was $1,646,186, which at the above rate would produce $4938.55. The amount of tax assessed by said board on the property of this company in the township of Union in the year 1885 was $24,697.29, being an excess of tax in said township of more than $19,000 over what the company would pay in that township if they paid full local rates on all their property therein, including a just share of the value of the franchise.

In the township of Weehawken the valuation of all the property in the year 1885 was $6,229,953. The amount of tax to be raised in said township for local purposes in the year 1885 was $46,272.55. A tax at the rate of seventy-four and three-tenths cents on $100, on all the property in the township of Weehawken, would produce $46,288.55, being a little more than all the tax required for local purposes in that township in the year 1885. The value of the property of this company in the township of Weehawken in the year 1885, acccording to the valuation of the state board of assessors, was $3,915,-953, which at the above rate would produce a tax of $29,-095.53. The company was taxed on its property in the township of Weehawken in the year 1885, by the state board of assessors, the sum of $46,839.29, being $17,743.76 more than it would have to pay if taxed at local rates.

The prosecutor claims deduction from the tax as assessed in the township of Union by the state board of assessors over

the sum of $19,000, and also the sum of $17,743.76, from the taxes assessed by the board in the township of Weehawken. Such deductions are claimed under the section of the act of 1884 from which I have quoted the above extract.

I think the West Shore and Ontario Terminal Company was, in the year 1885, taxed by the state board of assessors in excess of the amount which the law justifies.

An important question here arises. How is excessive taxation under the Railroad act of 1884 to be adjusted? From what tax is the deduction to be made? Whether from the local or the state tax, or from both? The act is silent on that subject, and it must be construed as best comports with the purposes for which it was passed.

It is claimed by the prosecution that the deduction should be made both from the state and local taxes as assessed by the state board.

Considering the history of railroad taxation in New Jersey from the very creation of that species of property, in connection with the act of 1884, it is evident that the legislature, in passing that law, did not intend to exempt railroad corporations from paying a state tax of one-half of one per cent. under any circumstances. That rate was imposed from the beginning, and has continued to be the rate, secured in the various special charters, and also by incorporation in the general law.

The act of 1884 was designed to increase the revenue from this source. It was not intended to diminish the revenue of the state. Had it been the intention of the legislature to change the long established policy of the state by diminishing the rate of the state tax on railroad corporations, in any event, such intention would have been manifested by clearly expressed words.

The imposition of a tax, not exceeding one per cent. upon a part of the property of railroad corporations, for local purposes, was a new feature of railroad taxation in this state.

Under the law of 1884 the rate of taxation for local pur-

poses may vary, while the rate of what is called the state tax is fixed.

It is from the varying amount that the deduction by reason of over-taxation is to be made, and not from the tax raised under the fixed rate for revenue essential to the support of the state government.

The result is that there should be a deduction from the amount assessed in this case by the state board of assessors.

In the township of Union, the whole local tax as assessed by the state board is rendered nugatory, and will be canceled by the deduction. But the company must pay the whole of the state tax assessed in that township by the board.

In the township of Weehawken the amount of tax for local purposes assessed by the state board of assessors on the property of the company should be reduced by deducting therefrom the sum of $17,763.76, leaving as the tax for local purposes in that township the sum of $29,095.53, which amount the company should pay, and also the whole state tax as assessed by the board.

The figures given herein may not be strictly accurate, but the state board of assessors will correct the assessments, on the principle above stated, by accurate calculation.

The error in valuation of a ferry-boat, before mentioned, will also be corrected.

The question of the constitutionality of the act of 1884, raised by one of the reasons, has not been discussed, because it has been settled by the court of last resort.

The assessment of the state board of assessors should be corrected in conformity with this opinion.