# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 00-20875

_____

MARK BERGER, ETC., ET AL.,

Plaintiffs,

MARK BERGER,
ON BEHALF OF HIMSELF AND ALL OTHERS SIMILARLY SITUATED,

Plaintiff-Appellee,

VERSUS

COMPAQ COMPUTER CORPORATION, ET AL.,

Defendants,

COMPAQ COMPUTER CORPORATION; ECKHARD PFEIFFER; EARL L. MASON;
JOHN T. ROSE; JOHN W. WHITE; ROBERT W. STEARNS; MICHAEL WINKLER;
THOMAS J. PERKINS; J. DAVID CABELLO; MICHAEL HEIL; GREGORY E. PETSCH;
KENNETH L. LAY; BENJAMIN ROSEN; AND RODNEY SCHROCK,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

July 25, 2001

Before SMITH, DUHÉ, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

In this securities litigation, the district court certified a plaintiff class and appointed class representatives. Because of legal error, we reverse and remand.

I.

On March 6, 1998, Compaq Computer Corporation announced that sales from one of its North American commercial channels were not meeting expectations and that there would be price reductions and aggressive promotions to reduce inventories. About a month later, Mark Berger, on behalf of all purchasers of Compaq stock between July 10, 1997, and March 6, 1998 (the "Investors"), sued Compaq and its directors (collectively "Compaq") complaining of violations of §§ 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. The Investors allege, *inter alia*, that Compaq attempted to inflate the price of its stock by fraudulently engaging in "channel stuffing," *i.e.*, "overselling" products to distributors with the knowledge that they would not be able to resell the products to end-users at rates consistent with the company's own sales.

Thirty-nine members of the putative class collectively moved for (1) appointment as lead plaintiffs, (2) approval of their selection of lead counsel, and (3) consolidation of all related actions.[1] The court granted the motion and

appointed all movants as lead plaintiffs.[2] The

---

[1] Under the "lead plaintiff" provisions of the Private Securities Litigation Reform Act of 1995 (continued...)

[1](...continued) ("PSLRA"), a plaintiff seeking to represent the class must file, together with the complaint, a sworn certification stating, *inter alia*, that the plaintiff (1) is not acting at the behest of counsel, (2) is familiar with the subject matter of the complaint, and (3) has authorized initiation of the action. 15 U.S.C. § 78u-4(a)(2)(A). The plaintiff then must give notice of the filing of the class action, advising class members of their right to move to serve as lead plaintiffs. *Id.* at § 78u-4(a)-(3)(A)(i). The court then must appoint a "lead plaintiff," adopting the rebuttable presumption that the "most adequate plaintiff" (1) has either filed the complaint or made a motion to be appointed lead plaintiff, (2) has the largest financial interest in the relief sought by the putative class, and (3) otherwise satisfies FED. RULE CIV. P. 23. *Id.* at § 78u-4(a)(3)(B)(i)-(iii).

[2] Although the appointment of such a large group to serve as lead plaintiff is not before this court, it is notable that the Securities and Exchange Commission has taken the position that a group of investors appointed to serve as lead plaintiffs ordinarily should comprise no more than three to five persons. *See In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 224 (D.D.C. 1999). In that case, the district court refused to appoint a twenty-member group, citing the "particular concern [which] arises when lead plaintiff status is sought by a 'group' of persons who were previously unaffiliated, each of whom have [*sic*] suffered modest losses, and who thus have no demonstrated incentive or ability to work together to control the litigation." *Id.* Likewise, in *In re Waste Mgmt., Inc. Sec. Litig.*, 120 F. Supp.2d 401, 413 (S.D. Tex. 2000), the court concluded that "the strictest approach, requiring at maximum a small group with the largest financial interest in the outcome of the litigation and a pre-litigation relationship based on more than their losing investment, satisfies the terms of the [PSLRA] and serves the purpose (continued...)

Investors then filed a consolidated amended complaint, which Compaq moved to dismiss on various grounds, including failure to meet the pleading requirements of the PSLRA and FED. R. CIV. P. 9(b);[3] the court denied the motion to dismiss and a motion for reconsideration.

While the motion to dismiss was pending, the Investors moved for class certification. Although they initially proposed that all thirty-nine lead plaintiffs serve as class representatives, that number eventually was whittled to seven, only four of whom appeared at depositions. Compaq filed a motion opposing class certification on the ground that the Investors "had not satisfied their burden of showing that the proposed representatives were directing and controlling this litigation as required by rule 23 and the Reform Act." The district court granted the motion for class certification and appointed as class representatives the four plaintiffs who had appeared at depositions.

Shortly after the certification, Compaq sought a writ of mandamus from this court directing the district court to dismiss the complaint on the ground that it did not satisfy the pleading requirements of the PSLRA. Compaq also petitioned this court to permit an interlocutory appeal of the certification order pursuant to FED. R. CIV. P. 23(f). We denied mandamus but granted interlocutory review, and that appeal is before us now.

II.

"We review a district court's class certification decisions for abuse of discretion." *Pederson v. La. State Univ.,* 213 F.3d 858, 866 (5th Cir. 2000). "[T]he district court maintains great discretion in certifying and managing a class action. We will reverse a district court's decision to certify a class only upon a showing that the court abused its discretion, or that it applied incorrect legal standards in reaching its decision." *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 624 (5th Cir. 1999) (citations omitted), *cert. denied*, 528 U.S. 1159 (2000). "Whether the district court applied the correct legal standard in reaching its decision on class certification, however, is a legal question that we review de novo." *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 408 (5th Cir. 1998).

An action may proceed as a class action only if the party seeking certification[4] demonstrates that all four of the familiar requirements of rule 23(a) are satisfied:

(1) the class be so numerous that joinder of all members is impracticable;

(2) there be questions of law or fact

---

[2](...continued)
behind its enactment[.]"

[3] Under the PSLRA, plaintiffs no longer are permitted to plead scienter generally; rather, they must "with respect to each act or omission . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *See* 15 U.S.C. § 78u-4(b)(2). Rule 9(b) provides, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."

[4] The party seeking certification bears the burden of proof. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir. 1996); *see also In re Am. Medical Sys.*, 75 F.3d 1069, 1086 (6th Cir. 1996) (reversing the district court because "the practical effect of the proceeding below was to place the burden on defendants to disprove plaintiffs' 'entitlement' to class certification.").

common to the class;

(3) the claims or defenses of the representative parties be typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a). The main issue in this appeal is whether the Investors carried their burden on the fourth requirement.[5]

Rule 23(a)'s adequacy requirement encompasses class representatives, their counsel, and the relationship between the two. *See* 7A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1769.1, at 375 (2d ed. 1986). Compaq neither challenges the adequacy of class counsel nor contends that any conflict between the representatives and the class members precludes certification, so the question is whether the court applied the correct legal standard in determining the adequacy of the class representatives under rule 23, *i.e.*, whether the putative class representatives are "willing" and "able" to "take an active role in and control the litigation

and to protect the interests of absentees."[6]

This court has determined that

[t]he adequacy requirement mandates an inquiry into [1] the zeal and competence of the representative[s'] counsel and . . . [2] the willingness and ability of the representative[s] to take an active role in and control the litigation and to protect the interests of absentees[.]

*See Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir. 1982) (citations omitted).[7] The adequacy inquiry also "serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent." *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Furthermore, because absent class members are conclusively bound by the judgment in any class action brought on their behalf, the court must be especially vigilant to ensure that the due process rights of all class members are safeguarded through adequate representation

---

[5] Compaq does not challenge the rulings that the Investors have satisfied the numerosity, commonality, and typicality requirements of rule 23(a), or that certification is appropriate under rule 23(b)(3), which provides that an action may be maintained as a class action if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

[6] The district court's observation that Compaq's decision not to challenge the adequacy of class counsel "tends to undermine [Compaq's] argument that the class will be inadequately represented" evinces a misunderstanding of the nature of the adequacy inquiry and of Compaq's contention that class representatives, not class counsel, must direct the litigation.

[7] The task of defining the precise contours of rule 23(a)'s adequacy requirement was largely left to the lower courts after *Hansberry v. Lee*, 311 U.S. 32 (1940). *See generally* 7A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1765, at 269 (2d ed. 1986). Consequently, there is a lack of uniformity in the various formulations of the requirements for adequacy.

at all times.[8] Differences between named plaintiffs and class members render the named plaintiffs inadequate representatives only where those differences create conflicts between the named plaintiffs' and the class members' interests.[9]

Although we do not know whether the named plaintiffs could meet the adequacy standard,[10] we do know that the district court

---

[8] *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) ("[T]he Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members."); *see also Hervey v. City of Little Rock*, 787 F.2d 1223, 1227 (8th Cir. 1986) (noting that even if the parties stipulate to certification, the court still must conduct a thorough rule 23(a) inquiry: "While class stipulations by the parties may be helpful, they are not complete substitutes for 'rigorous analysis.' The purpose of this analysis is to protect unknown or unnamed potential class members, and by definition those people do not and cannot participate in any stipulations concocted by the named parties.").

[9] *See Jenkins v. Raymark Indus., Inc.,* 782 F.2d 468, 472 (5th Cir. 1986) (considering, in evaluating the requirement of adequate representation, whether named plaintiffs have "an insufficient stake in the outcome or interests antagonistic to the unnamed members"; s*ee also Mullen,* 186 F.3d at 626 (noting that although the differences described by defendant might create variances in the ways that the named plaintiffs and class members prove causation and damages, this did not affect the alignment of their interests).

[10] Compaq argues that the four named class representatives fall far short of meeting the standard. Set forth below are excerpts from Compaq's brief in this regard:

(continued...)

---

[10](...continued)

. . . [T]he [deposition] testimony of these representatives shows indifference to and ignorance of key facts, a willingness to speculate without foundation, decisions based on misinformation and blind reference on counsel. The proposed representatives could not give any basis for their conclusory "channel stuffing" allegations and could not explain, except through speculation, why they accused Compaq's Chief Executive Officer and twelve other individuals of fraud. They could not articulate one fact to suggest that excess channel inventory was due to fraud rather than to an unforeseen change in market conditions or a mistake in business judgment, and instead relied on what they themselves admitted was pure supposition and hindsight reasoning.

. . .

Their shortcomings include taking positions in conflict with the Complaint, basing allegations on misinformation, and speculating without foundation about accusations of fraud against individuals.

. . .

[N]one could articulate a distinction between legitimate and fraudulent sales to the channel or identify a single specific fact supporting their allegation that excess channel inventory in this case was the result of channel "stuffing" rather than of a nonfraudulent cause, such as demand or competition.

When asked to give a basis for their allegations regarding what supposedly motivated the Company's chief executive, Eckhard Pfeiffer, to commit fraud, the representatives were not able to identify any

(continued...)

erred in two respects. First, it improperly shifted the burden of proof to the defendants by adopting a presumption that the class representatives and their counsel are adequate in the absence of specific proof to the contrary. Second, it applied an impermissibly lax standard for adequacy that ignores the PSLRA's mandate that class representatives, and not lawyers, must direct and control the litigation. The Investors' arguments to salvage both rulings are unpersuasive.[11]

A.

The district court unquestionably adopted an incorrect legal standard by stating that "[t]he adequacy of the putative representatives

and of plaintiffs' counsel is presumed in the absence of specific proof to the contrary." This is error; the party seeking certification bears the burden of establishing that *all* requirements of rule 23(a) have been satisfied. *See Castano,* 84 F.3d at 740. *Falcon v. General Telephone Co.*, 626 F.2d 369 (5th Cir. 1980), *vacated on other grounds*, 450 U.S. 1036 (1981), cited by the district court, is not to the contrary.

In *Falcon*, *id.* at 376 n.8, this court merely approved the practice of taking judicial notice of the competence of class counsel.[12] Taking judicial notice of the fact that counsel is competent, however, is not the same as holding that class representatives therefore are presumed to be adequate under rule 23(a)(4). Indeed, the district court's presumption inverts the well-established rule that the party seeking certification bears the burden of establishing all elements of rule 23(a). Even more unsettling is that the district court's presumption ignores the constitutional dimensions of the adequacy requirement, which implicates the due process rights of all members who will be bound by the judgment.

The Investors' words belie the error. They characterize the district court's action not as shifting the burden of proof, but rather as a full consideration of "defendants' objections to the certified representatives' adequacy as well as evidence to the contrary presented by plaintiffs." The argument's structure confesses

---

[10](...continued)
supporting facts, and simply resorted to speculation, irrelevant personal experiences, and undifferentiated citation to the Complaint.

One representative not only had no knowledge regarding why Pfeiffer allegedly committed fraud, but disavowed the allegations in the Complaint that Pfeiffer committed fraud in order to receive higher bonus compensation.

. . . Such conflicts between what the proposed class representatives believe and what the Complaint and class counsel allege indicate that the lawyers . . ., and not the plaintiffs themselves, are driving this litigation.

[11] First, they claim that the court merely concluded that "the skill and experience of plaintiffs' counsel is more important" in assessing adequacy than are "the personal qualifications of the named parties." Second, they aver that the court properly rejected Compaq's argument regarding the PSLRA's effect on the stringency of rule 23(a)'s adequacy requirements.

[12] *See also* 7A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1765, at 277-78 (2d ed. 1986) ("Moreover, a few courts have indicated that if the opposing party fails to challenge the ability of representatives' counsel to conduct the action, his competence will be assumed.").

the error: Adequacy is for the plaintiffs to demonstrate; it is not up to defendants to disprove the presumption of adequacy.

The Investors' offer of supporting precedent also fails. Neither case they cite supports their argument that once they establish (1) the lack of conflict between the representatives and the absent class members and (2) the adequacy of class counsel, adequacy of class representation is "presumed." In *Kalodner v. Michaels Stores, Inc.*, 172 F.R.D. 200, 211 (N.D. Tex. 1997), for example, the court merely presumed the adequacy of class counsel. Likewise, in *Longden v. Sunderman*,[13] even though the court concluded that "the qualifications and experience of class counsel is of greater consequence than the knowledge of class representatives," there is no mention of any "presumption" whereby evidence of a lack of conflict together with evidence of counsel's competency, without more, conclusively establishes the adequacy of class representation.

In sum, the district court's "presumption" of adequate class representation "in the absence of any specific proof to the contrary" is reversible error on two grounds. First, it inverts the requirement that the party seeking certification bears the burden of proving all elements of rule 23(a). Second, it effectively abdicatesSSto a self-interested partySSthe court's duty to ensure that the due process rights of the absent class members are safeguarded.

### B.

Compaq also argues that the district court applied an impermissibly lax adequacy standard. We address this issue to guide the district court on remand.

Compaq's basic contention is that when assaying whether the named plaintiffs are adequate, a court must account for PSLRA's substantive goals. In responding to this assertion, we analyze the PSLRA and our precedent. Although the extent of the PSLRA's impact on the rule 23 inquiry is a matter of first impression in this circuit, we are guided by analogous precedent involving other statutes. Additionally, we consider the particular statutory change effected by the PSLRA.

As an initial matter, we articulate the adequacy standard outside of any specific statutory context. The district court cited *Surowitz v. Hilton Hotels Corp.,* 383 U.S. 363 (1966), for the notion that "[a]dequacy is a low threshold." This is a misapplication of *Surowitz.*

Although "often cited inaccurately to support arguments that plaintiffs with little understanding of the facts or theories of their claims and little incentive to monitor the litigation can nonetheless be adequate class representatives,"[14] *Surowitz* did not address the

---

[13] 123 F.R.D. 547, 557-58 (N.D. Tex. 1988) ("In order to satisfy the requirements of rule 23(a)(4) that the representative parties fairly and adequately protect the interests of the class, the interests of the class representative must not be antagonistic to those of the remaining class members, and the representative parties, through their attorneys, must be prepared to prosecute the action vigorously.").

[14] *See* Elliot J. Weiss and John S. Beckerman, *Let the Money Do the Monitoring: How Institutional Investors Can Reduce Agency Costs in Securities Class Actions*, 104 YALE L.J. 2053, (continued...)

adequacy requirement, but concerned only the verification of a complaint. Just as *Surowitz* did not hold, this circuit has never read *Surowitz* so broadly as to support the proposition that a class representative who does not understand any of the legal relationships or comprehend any of the business transactions described in the complaint nonetheless may be "adequate" for purposes of class certification.

To the contrary, we have described "[t]he adequacy requirement [as one that] mandates an inquiry into . . . the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." *Horton*, 690 F.2d at 484. Likewise, even in *Gonzales v. Cassidy*, 474 F.2d 67 (5th Cir. 1973), which interpreted rule 23(a)'s adequacy requirement somewhat more loosely, we insisted that "it must appear that the representative[s] will vigorously prosecute the interests of the class through qualified counsel." *Id.* at 72 (5th Cir. 1973). Both understandingsSSeven accepting the variance between themSSrequire the class representatives to possess a sufficient level of knowledge and understanding to be capable of "controlling" or "prosecuting" the litigation.[15]

Once the generic standard is understood, the indagation becomes whether, and to what extent, the statute affects the standard. "[T]he class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *See Castano,* 84 F.3d at 744 (citing *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468 (1978) (internal quotation marks and citation omitted)).[16] Likewise, we have called for rule 23 to be interpreted to accommodate the substantive policies of the governing statute.[17]

Indeed, this court's pre-Reform Act precedent outside the context of securities fraud litigation already has recognized the importance, when making the adequacy determination, of assessing "the willingness and ability of the representatives to take an active role in and control the litigation." *See Horton*, 690 F.2d at 484. Although, certainly, class representatives need not be legal scholars and are entitled to rely on counsel, plaintiffs do

---

[14](...continued)
2127 n.254 (1995).

[15] The Investors' proffered cases undermine their claim. Even those opinions that privilege the counsel's qualifications over the class representatives' knowledge admit that the representatives' level of knowledge remains a relevant factor. *See, e.g., Longden*, 123 F.R.D. at 558 ("In analyzing the 'vigorous prosecution' element of the adequacy requirement, the Court concludes that the qualifications and experience of class counsel is of *greater* consequence than the knowledge of class representatives.") (emphasis

[15](...continued)
added).

[16] *Coopers & Lybrand* involved securities fraud, albeit in the context of pre-Reform Act law. Whether the case was pre- or post-Reform Act does not affect the principle at issue here: When making a class certification determination, courts should consider the applicable legal landscape. It would be somewhat inconsistent for us to rely on *Coopers & Lybrand* when creating precedent such as *Castano* and then not applySSor at least not inquire as to the applicability ofSS*Coopers & Lybrand* in a securities fraud case such as this one.

[17] *See Redditt v. Miss. Extended Care Ctrs.*, 718 F.2d 1381, 1388 (5th Cir. 1983) (stating that courts must interpret rule 23 to accommodate the substantive policies of title VII) (citations omitted).

need to know more than that they were "involved in a bad business deal." *Kelley v. Mid-America Stables Racing, Inc.*, 139 F.R.D. 405, 410 (W.D. Okla. 1990).[18] Unoccupied space exists between these positions for the purpose of preserving meaningful consideration of the class representatives' knowledge about, or control of, the litigation.

Any lingering uncertainty, with respect to the adequacy standard in securities fraud class actions, has been conclusively resolved by the PSLRA's requirement that securities class actions be managed by active, able class representatives who are informed and can demonstrate they are directing the litigation. In this way, the PSLRA raises the standard adequacy threshold.

The Investors, in response, rely on legislative history: "The provisions of the bill relating to the appointment of a lead plaintiff are not intended to affect current law with regard to challenges to the adequacy of the class representative or typicality of the claims among the class." H.R. Conf. Rep. No. 104-67, at 34-35 (1995). Assuming, *arguendo*, that we should even look to such legislative history here, it appears that because

---

[18] *Kelley* provides a useful example for this circuit. There the court noted, and we agree, that it is not enough that plaintiff's counsel are competent if the plaintiffs themselves almost totally lack familiarity with the facts of the case. *See Kelley*, 139 F.R.D. at 409-11. The *Kelley* court was concerned not only that the plaintiffs lacked familiarity with the facts, but also that counsel apparently was the source of plaintiffs' information. We see these as two separate requirements: Plaintiffs should understand the actions in which they are involved, and that understanding should not be limited to derivative knowledge acquired solely from counsel.

defendants are not entitled to challenge the appointment of lead plaintiffs, this reference merely reflects recognition by Congress that its overlay of the lead plaintiff provisions in class actions should not be interpreted to limit defendants' ability to challenge the adequacy or typicality of the proposed class representatives in the context of class certification. The district court erred in failing to consider the adequacy requirement through the lens of Congress's activity in this area.

### III.

In summary, it follows that in complex class action securities cases governed by the PSLRA, the adequacy standard must reflect the governing principles of the Act and, particularly, Congress's emphatic command that competent plaintiffs, rather than lawyers, direct such cases. Accordingly, to the extent that the district court's adequacy analysis failed to assess the representatives' own qualifications "to take an active role in and control the litigation," the court departed from the correct legal standard.

We reverse for the above error and for the improper shift, from plaintiff to defendant, of the burden of proof regarding an element of rule 23. Precedent and due process concerns require that courts protect potential class members by ensuring that the named plaintiffs demonstrate their adequacy. Class action lawsuits are intended to serve as a vehicle for capable, committed advocates to pursue the goals of the class members through counsel, not for capable, committed counsel to pursue their own goals through those class members.

VACATED and REMANDED.

9