Laura OGDEN,

v.

**AMERICREDIT CORP., et al.**

**No. CIV.A.4:03–CV–350–Y.**

United States District Court,
N.D. Texas,
Fort Worth Division.

Jan. 5, 2005.

David R. Scott, Scott & Scott, Colchester, CT, Theodore Carl Anderson, III, Kilgore & Kilgore, Dallas, TX, Arthur L. Shingler, III, Scott & Scott, San Diego, CA, for Plaintiff.

Burton D. Brillhart, Godwin Gruber, William L. Banowsky, Thompson & Knight, Matthew M. Julius, Dallas, TX, James P. Baker, Virginia H. Perkins, Orrick Herrington & Sutcliffe, San Francisco, CA, for Defendants.

*ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND GRANTING DEFENDANTS' CROSS MOTIONS TO DENY CLASS CERTIFICATION*

MEANS, District Judge.

Pending before the Court is plaintiff Laura Ogden's Motion for Class Certification [doc. # 93–1], filed March 29, 2004. Also pending before the Court is defendant AmeriCredit Corporation ("AmeriCredit")'s and the individual defendants' Cross Motion to Deny Class Certification [doc. # 100–2] and defendant T. Rowe Price Trust Company, Inc. ("T. Rowe Price")'s Cross Motion to Deny Class Certification [doc. # 103–1], both of which were filed May 7, 2004. Having carefully reviewed the motions, the responses, and the replies, the Court finds that Ogden's motion for class certification should be DENIED and that Defendants' cross motions to deny class certification should be GRANTED.

## I. BACKGROUND

Ogden is a former employee of AmeriCredit, which purchases auto-finance loans from automobile dealers and then conveys those loans to special-purpose securitization trusts that issue various asset-backed securities. Ogden participated in AmeriCredit's Employee 401(k) Plan ("the Plan"), a defined contribution plan covering all salaried employees of AmeriCredit and its subsidiaries. AmeriCredit was the Plan's sponsor and administrator and defendants Bank One Trust Company ("Bank One") and T. Rowe Price respectively acted as the Plan's trustees. Under the Plan, AmeriCredit employees could elect to have portions of their income allotted to their 401(k) plans. The Plan also included a matching-contribution schedule whereby AmeriCredit would match certain portions of employees' plan contributions with AmeriCredit stock or cash. Eventually, an employee's interest in the matched stock would vest and the employee would own his AmeriCredit shares outright.

Ogden elected to have AmeriCredit match her contributions with AmeriCredit stock. After achieving high prices in 2001 and early 2002, AmeriCredit stock began to decline in value. In 2003, AmeriCredit issued two press releases indicating that it was changing its accounting practices and that it would be reporting a loss for the most recent fiscal quarter. Ogden contends that AmeriCredit had to change accounting practices because Defendants failed to charge off delinquent accounts, neglected to establish adequate loan-loss reserves, and "improperly deferred delinquent loans to avoid charge-offs and to retain [AmeriCredit] access to cash, which otherwise would have been restricted." (Pl.'s Mot. for Class Certification at 3.) Following each press release by AmeriCredit, AmeriCredit stock prices fell further, resulting in the lowest price valuation for the stock in over three years.

On May 1, 2003, Ogden filed suit in this Court against AmeriCredit, Bank One, T. Rowe Price, and the individual defendants under the Employee Retirement Income Security Act of 1974 ("ERISA") for breach of fiduciary duty in connection with AmeriCredit's former accounting practices. Following a discovery period set by the Court, Ogden moved for class certification on March 29, 2004.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal court. The party seeking class certification bears the burden of proving that

certification is appropriate. *Applewhite v. Reichhold Chems., Inc.*, 67 F.3d 571, 573 (5th Cir.1995); *see also Kase v. Salomon Smith Barney, Inc.*, 218 F.R.D. 149, 151 (S.D.Tex.2003) (citing *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 n. 4 (5th Cir.2001)) (Rainey, J.). Whether certification is proper is a two-fold inquiry. A movant must first satisfy all of the requirements of Rule 23(a), which provides that certification is only appropriate where "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a) (2004). Should Rule 23(a) be satisfied, the matter must also fit within one of the categories of actions described in Rule 23(b).[1] "In the absence of proof of all required elements, the court may not certify a class." *Broussard v. Parish of Orleans,* CIVIL ACTION NO. 00–2318 c/w 00–3055 SECTION "R" (2), 2001 WL 881290, at *3, 2001 U.S. Dist. LEXIS 11941, at *6 (E.D.La. Aug. 2, 2001) (citing *Berger,* 257 F.3d 475).

■ A court must rigorously analyze whether Rule 23 has been met, conducting a reasoned and thorough analysis of whether a class may be certified. *See Musmeci v. Schwegmann Giant Super Mkts.*, CIVIL ACTION NO: 97–2757, 2000 WL 1010254, at *1, 2000 U.S. Dist. LEXIS 10497, at *5 (E.D.La. July 20, 2000) (citing *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 624 (5th Cir.1999)); *Castano v. American Tobacco Co.,* 84 F.3d 734, 740 (5th Cir.1996) (citing *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)); *see also Applewhite,* 67 F.3d at 573. For purposes of a class-certification motion, the substantive allegations contained in the complaint must be accepted as true. *Lehocky v. Tidel Techs., Inc.,* 220 F.R.D. 491, 498

(S.D.Tex.2004) (Hittner, J.). The party seeking certification "may rely on reasonable, common-sense assumptions and inferences to satisfy the requirements of Rule 23." *Kase,* 218 F.R.D. at 152 (citing *Fleming v. Travenol Labs., Inc.,* 707 F.2d 829, 833 (5th Cir. 1983)). However, "[u]nsupported allegations that the case satisfies the requirements of Rule 23 are an insufficient basis for certifying a class action." *Id.* (citing *Zeidman v. J.R. McDermott & Co.,* 651 F.2d 1030, 1039 (5th Cir.1981)).

■ The district court "maintains great discretion in certifying a class action, which is essentially a factual inquiry." *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 224 F.R.D. 613, 621 (E.D.Tex.2004) (citing *Vizena v. Union Pac. R.R. Co.,* 360 F.3d 496, 502 (5th Cir.2004)). However, the district court's discretion "is not without limits … [a district judge] must bear in mind the impact of a binding judgment on class members and the functions of the class action in facilitating assertion of certain types of claims or defenses and in avoiding repetitious litigation." *Horton v. Goose Creek Independent School Dist.,* 690 F.2d 470, 483 (5th Cir.1982). Nonetheless, a district court's decision to certify a class will only be reversed "upon a showing that the court abused its discretion, or that it applied incorrect legal standards in reaching its decision." *Vizena,* 360 F.3d at 502 (5th Cir.2004) (quoting *Berger v. Compaq Computer Corp.,* 257 F.3d 475, 478 (5th Cir. 2001)); *see also B & B Advisory Servs. L.L.C. v. Bombadier Aero. Corp.,* CIVIL ACTION NO. 02–2695 SECTION "A" (3), 2003 WL 22038381, at *4, 2003 U.S. Dist. LEXIS 15269, at *14 (E.D.La. Aug. 22, 2003) ("the Fifth Circuit defers to the district court's inherent power to manage and control pending litigation, reviewing certification decisions only for abuse of discretion") (citing *Smith v. Texaco,* 263 F.3d 394, 403 (5th Cir.2001)). "While a court should not reach the case's merits, the court must understand

---

1. Rule 23(b) provides three mechanisms for certification that "reflect a balance between the need for, and efficiency of, a class action and the class members' interests in pursuing their claims separately or not at all." *In re Elec. Data Sys. Corp. "ERISA" Litig.,* 224 F.R.D. 613, 627 (E.D.Tex.2004) (citing *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 412 (5th Cir.1998)) (Davis, J.). "These mechanisms categorize class actions according to the nature or effect of the relief sought." *Id.* Because the Court concludes that Ogden has not satisfied all of Rule 23(a)'s requirements, analysis of Rule 23(b) is not necessary.

the facts, claims, defenses, and substantive law to make a meaningful certification decision." *In re Elec. Data Sys. Corp. "ERISA" Litig.*, 224 F.R.D. 613, 621.

## III. ANALYSIS

 Even assuming that Ogden would be able to satisfy the first three requirements of Rule 23(a), her motion for class certification must be denied because she is unable to show the fourth requirement by establishing that she will fairly and adequately represent the class. "[T]he adequacy requirement mandates an inquiry into (1) the zeal and competence of the representative's counsel and . . . (2) the willingness and ability of the representative[ ] to take an active role in and control the litigation to protect the interests of the absentees." [2] *Berger*, 257 F.3d at 479 (citing *Horton*, 690 F.2d at 484). Additionally, "[t]he adequacy inquiry also

'serves to uncover conflicts of interest between the named plaintiffs and the class they seek to represent.'" *Id.* at 479–80 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)). Because "absent class members are conclusively bound by the judgment in any class action brought on their behalf, the court must be especially vigilant [in] ensur[ing] that the due process rights of all class members are safeguarded through adequate representation at all times." *Ardoin v. Stine Lumber Co.*, 220 F.R.D. 459, 466 (W.D.La. 2004) (citing *Berger*, 257 F.3d at 480). Furthermore, adequacy cannot be presumed—"it is error to presume the adequacy of the putative representative[ ] in the absence of specific proof otherwise." *In re Am. Commer. Lines, LLC*, 2002 WL 1066743, at *9, 2002 U.S. Dist. LEXIS 10116, at *35–36. As with all factors in a motion to certify a class, the movant bears the burden of proof on the

---

**2.** The Court notes that *Berger* discussed both the adequacy standard under Rule 23(a)(4) and the heightened standard for securities fraud class actions as mandated by the Private Securities Litigation Reform Act ("PSLRA"). The Fifth Circuit stated: "the PSLRA[ ] require[s] that securities class actions be managed by active, able class representatives who are informed and can demonstrate they are directing the litigation. In this way, the PSLRA raises the standard adequacy threshold." *Berger*, 257 F.3d at 483. However, the Fifth Circuit later clarified that *Berger's* discussion of Rule 23(a)(4)'s adequacy standard and the heightened standard necessary in PSLRA cases involve separate inquiries: "[w]e have not . . . created an additional requirement under rule 23(a)(4) that, after completing the process of selecting the lead plaintiff and lead counsel, a court may grant class certification only if the putative class representative possesses a certain level of expertise, wealth, or intellect, or a level of knowledge and understanding of the issues, beyond that required by our long-established standards for rule 23 adequacy of class representatives." *Berger v. Compaq Computer Corp.*, 279 F.3d 313, 313–14 (5th Cir.2002) ("*Berger II*"). *Berger's* Rule 23(a)(4) requirement that a movant demonstrate a "willingness and ability . . . to take an active role in and control the litigation to protect the interests of the absentees," *Berger*, 257 F.3d at 479, is therefore not limited to PSLRA class actions. In fact, the *Berger* court adopted that standard from a former Fifth Circuit opinion involving Fourth Amendment issues. *See Horton v. Goose Creek Indep. Sch. Dist.*, 690 F.2d 470, 484 (5th Cir.1982).

Furthermore, this standard has been applied by district courts both in similar cases and in factual situations completely unrelated to securi-

ties fraud allegations. *See In re Elec. Data Sys. Corp.*, 224 F.R.D. 613 (Davis, J.) (applying *Berger* standard to action where former employees brought claims under ERISA and the PSLRA against their employer for breaches of fiduciary duty in administering a matching contribution plan with over-inflated stock); *In re Am. Commer. Lines, LLC*, CIVIL ACTION NO. 00–252 c/w 00–2967 c/w 00–3147 SECTION: "N", 2002 WL 1066743, 2002 U.S. Dist. LEXIS 10116 (E.D.La. May 28, 2002) (applying *Berger* standard to maritime-negligence and strict-liability action); *Kase*, 218 F.R.D. at 149 (Rainey, J.) (applying *Berger* standard to breach of contract action); *Umsted v. Intelect Communications, Inc.*, Civil Action No. 3:99–CV–2604–M, 2003 WL 79750, 2003 U.S. Dist. LEXIS 218 (N.D.Tex. Jan. 7, 2003) (Lynn, J.); *Krim v. pcOrder.com*, 210 F.R.D. 581 (W.D.Tex.2002) (Sparks, J.); *In re United States Liquids Secs. Litig.*, MASTER FILE NO. H–99–2785, 2002 U.S. Dist. LEXIS 26713 (S.D.Tex. June 2, 2002) (Harmon, J.) (discussing distinction between Rule 23(a)(4)'s and PSLRA's standards); *McNamara v. Bre–X Minerals, Ltd.*, 5:97–CV–159, 2003 U.S. Dist. LEXIS 25641 (E.D.Tex. March 31, 2003) (Folsom, J.) (securities fraud case, recognizing that PSLRA has additional requirements beyond Rule 23(a)(4)'s standard); *Broussard*, 2001 WL 881290, 2001 U.S. Dist. LEXIS 11941.

Review of this case law demonstrates that application of the Rule 23(a)(4) adequacy standard articulated in *Berger* to the present motion is both appropriate and necessary. The Court's use of *Berger* in its analysis of Ogden's adequacy will therefore be limited to those portions of *Berger* discussing Rule 23(a)(4)'s requirements, and not those portions discussing the additional requirements imposed by the PSLRA.

question of adequacy. *See Griffin v. GK Intelligent Sys.*, 196 F.R.D. 298, 302 (S.D.Tex.2000) (citing *Kelley v. Mid–America Racing Stables, Inc.*, 139 F.R.D. 405, 410 (W.D.Okla.1990)).

The Court has no reason to question the experience, qualifications, or abilities of Ogden's counsel, and Defendants have not raised any challenges to their suitability. The Court therefore concludes that Ogden's counsel is qualified and suitable to represent the proposed class.

Ogden, however, is not a suitable representative for the putative class. Absent the Court's recent hearing on the motions, and Ogden's affidavit filed in response to her failure to appear at the hearing, the Court recognizes that resolving Ogden's adequacy would be a close question. Ogden's deposition testimony initially indicates that she has been involved in the ongoing preparation of her case and that she has an understanding of part of the action's factual underpinning.[3] However, further examination of Ogden's deposition testimony indicates that there are many instances in which she has little or no knowledge outside of that given to her by her attorneys.

For instance, regarding why T. Rowe Price is joined as a defendant in the action, Ogden does not know whether T. Rowe Price played any role in the management of AmeriCredit,

(Ogden Dep. at 223:16–223:19), cannot identify a single action taken by T. Rowe Price that inflated AmeriCredit stock, (*id.* at 262:3–262:9), has no knowledge of whether T. Rowe Price ever misinformed plan participants, (*id.* at 262:22–263:3), cannot state how she was harmed by T. Rowe Price's actions, (*id.* at 263:20–263:25, 265:9–265:21), knows of no facts supporting her allegation that T. Rowe Price issued materially false and misleading statements about AmeriCredit's conduct, (*id.* at 268:15–268:24), and is unaware of any facts supporting her contention that T. Rowe Price knowingly participated in AmeriCredit's fiduciary breaches (*id.* at 288:18–288:22, 289:6–289:13). In addition, Ogden cannot state any facts indicating that T. Rowe Price had insider information about AmeriCredit stock not available to plan participants, (*id.* at 296:9–296:15), does not know how T. Rowe Price's actions caused the Plan to suffer losses, (*id.* at 279:16–280:25), cannot indicate how T. Rowe Price failed to adequately monitor the Plan's investments, (*id.* at 294:14–294:24), knows of no facts to support her allegation that T. Rowe Price acted contrary to the best interests of the Plan's participants, (*id.* at 295:2–295:15), and does not know whether T. Rowe Price had the ability to buy or sell AmeriCredit stock held by the Plan, (*id.* at 283:9–283:12). It seems Ogden's sole basis for her suit against T. Rowe Price is that she knows that something unfortunate happened

---

**3.** For instance, when asked how AmeriCredit inflated the value of the stock used as a matching contribution in Ogden's 401(k) plan, Ogden responded: "Well, by inaccurately reporting all of the—and keeping inadequate reserves, they reported record gains and showed a lot of money as profit on a continual basis, annual, so it showed them making a lot of money continually over, and the stock began to inflate, upwards, upwards, it trended up, up, up, until they released their press release saying that they—that they had to make some corrections to their reporting, and then the stock dropped off dramatically." (Ogden Dep. at 13, line 12 to line 21 (hereinafter "13:12–13:21").) Later, when asked how AmeriCredit engaged in inaccurate reporting, Ogden stated, "Well, as far as they—they had monthly, quarterly, annual reporting of their delinquency, which apparently they had deferred some loans, which maybe should not have been deferred." (*Id.* at 15:8–15:11.) When asked how this practice could impact AmeriCredit, Ogden answered: "It reduces the delinquency down. Make the—the—say they're showing a delinquency of 5%. If you deferred several of

those loans, you could—you could move that delinquency down to maybe 3% or 7%, whatever you were trying to get in line because that is something people look at." (*Id.* at 18:8–18:24.) Later Ogden indicated that one of AmeriCredit's press releases "meant that some of the delinquency numbers had been lowered based on the actual, and, thus—so—so it showed a higher income or a higher revenue. It showed a more profitable report than what may have actually occurred." (*Id.* at 77:24–78:4.) These statements indicate Ogden's awareness of her claim against AmeriCredit as well as an ability to articulate her knowledge. Furthermore, Ogden's deposition shows that she monitored the value of her stock, (*id.* at 27:12–27:18), understood the nature of her 401(k) plan, (*id.* at 29:11–31:24), has a desire to act as class representative, (*id.* at 166:13–166:19, 170: 21–171:5, 174:3–174:7), and has been involved in the preparation of litigation materials (*id.* at 133:19–135:17, 172:4–172:24, 190:25–191:8 (spoke with attorneys often, participated in preparation of interrogatories and responses, assisted attorneys in drafting complaint).)

to her 401(k) plan and she assumes, because of its position as trustee to the Plan, that T. Rowe Price had something to do with it. Completely missing is her knowledge of even one fact to support her assumption that T. Rowe Price was involved with, had some control over, or had knowledge of AmeriCredit's accounting practices and the resulting fluctuation to Ogden's plan assets.

Ogden's knowledge regarding Bank One is equally as elusive and conclusory. Ogden is unaware of how Bank One knowingly participated in AmeriCredit's fiduciary breaches, (*id.* at 250:11–250:19), cannot identify how Bank One failed to comply with ERISA, (*id.* at 250:20–251:3), is unable to state how Bank One breached its fiduciary duty as a trustee of the Plan, (*id.* at 251:12–251:24), and does not know whether Bank One ever gave plan participants false information of any kind (*id.* at 253:22–254:11). Furthermore, Ogden cannot state any facts showing that any of the individual defendants had knowledge of AmeriCredit's irregular accounting practices, (*id.* at 90:9–93:3), cannot articulate why the proposed class period begins and ends when it does, (*id.* at 227:13–227:21, 251:4–251:11), and is unable to identify who would be included within the putative class (*id.* at 229:2–234:1). While Ogden is aware that her attorneys are representing her on a contingency basis, she is unaware as to the individual costs associated with pursuing her claim.[4] (*Id.* at 176:9–177:21).

In fact, Ogden relies on counsel to supply much of this information. (*Id.* at 227:13–228:3, 174:8–174:17 (relied on counsel to figure out the class period dates), 279:16–279:21, 298:10–298:25 (is relying on counsel to inform her of how T. Rowe Price's actions caused plan participants to suffer the losses that they did).) Additionally, Ogden's deposition testimony indicates that she repeatedly was unable to answer Defendants' questions, responding only that the answer to the question is contained in her complaint, or relying on her attorney to make that argument. (*Id.* at 285:18–285:24,[5] 160:15–160:22, 161:6–162:12, 188:8–188:17,[6] 215:1–218:20, 221:2–221:12.)

It is well settled that "class representatives are not required to have a complete knowledge of the case." *Lehocky,* 220 F.R.D. at 503 (citing *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 62 (2d Cir.2000); *In re Firstplus Fin. Group, Inc. Sec. Litig.,* Civil Action No. 3:98–CV–2551–M, 2002 WL 31415951, at *2–3, 2002 U.S. Dist. LEXIS 20446, at *7 (N.D.Tex. Oct. 23, 2002) (Lynn, J.)). However, while "class representatives need not be legal scholars and are entitled to rely on counsel, [they] do need to know more than that they were 'involved in a bad business deal.'" *Berger,* 257 F.3d at 483 (citing *Kelley,* 139 F.R.D. at 410); *see also Krim,* 210 F.R.D. at 587. Ogden's knowledge regarding her suit does not comport with this standard. A review of her deposition indicates that her only basis for her suit is that bad things occurred and the defendants must have been involved simply because of their various relationships with AmeriCredit. Ogden cannot state how any of the individual defendants, T. Rowe Price, or Bank One were involved in the losses to the Plan, is unable to identify any fact supporting her allegations against them, and relies solely on her counsel that they are proper defendants in her suit. This is the essence of knowing only that she was "involved in a bad business deal." Ogden's lack of information regarding her own suit is troubling. While Ogden cannot be expected to know all of the legal minutia involved in litigating her case, she should at least have

---

4. The Court notes that Ogden is unaware of other facts supporting her claims. In the interest of brevity, the Court will not specifically list every fact of which Ogden is unaware.

5. This portion reads:
Q: Do you contend that T. Rowe Price breached its duties of loyalty and prudence to the plan?
Ogden's Attorney: Plaintiff's contentions are contained in the complaint, but she can answer.

A: The documents say what they say. I personally don't have a huge amount of knowledge regarding it, so I can't really answer the question.

6. This portion of Ogden's testimony reads:
Q: Well, what—what do you want to accomplish as a result of this lawsuit?
Ogden's attorney: Same objection with regard to expert analysis.
A: The document says what the allegations are. I would like them cleared up . . .

an understanding of why all of the individuals or companies are defendants other than her general knowledge that a bad business deal occurred. *Berger* recognized that Rule 23(a)(4) "require[s] the class representative[ ] to possess a sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litigation." *Berger*, 257 F.3d at 482–83. Ogden lacks this level of knowledge and understanding, and in two separate depositions could not even articulate facts supporting her suit against most of the defendants.

Furthermore, Ogden "should understand the action in which [she is] involved, and her 'understanding should not be limited to derivative knowledge acquired solely from counsel.'" *Krim*, 210 F.R.D. at 587 (citing *Berger*, 257 F.3d at 483 n. 18). "[I]t is not enough that plaintiff's counsel are competent if the plaintiffs themselves almost totally lack familiarity with the facts of the case." *Berger*, 257 F.3d at 483 n. 18 (citing *Kelley*, 139 F.R.D. at 409–11); *see also Broussard*, 2001 WL 881290, at *6, 2001 U.S. Dist. LEXIS 11941, at *16. "An example of an adequate class representative is one with 'commendable familiarity with the complaint and the concept of a class action.'" *Krim*, 210 F.R.D. at 587 (citing *Horton*, 690 F.2d at 484). Ogden knows who the defendants are and what their various relationships to AmeriCredit were, but she lacks both a knowledge of how they were involved in affecting the Plan and a "commendable familiarity" with her complaint. Instead of being able to discuss portions of her complaint, Ogden is only able to direct her questioners to find the answer in the complaint itself. This does not suggest the level of knowledge and familiarity with her complaint and the underlying facts necessary for the Court to make a finding of adequacy.

Furthermore, it is apparent that much of her knowledge is derived from counsel. While this is acceptable to some degree, the extent to which it is present in this case renders Ogden's adequacy arguments unpersuasive. She is unable to describe whole portions of her complaint. She has no factual knowledge, beyond knowing that money was lost, to support the allegations in her complaint. And it is apparent that counsel has provided the vast majority of the knowledge that she does possess.[7]

Ogden has testified that she has relied on her counsel to make many of the decisions involved in pursuing her claims, yet she has done little to no research regarding the suitability of her attorneys' acting as class counsel. Ogden initiated her relationship with her attorneys in response to a solicitation by them, (Ogden Dep. at 118:19–120:8), has not contacted or spoken with any other attorneys regarding her claims, (*id.* at 120:9–120:14), does not have any independent knowledge of her attorneys' experience, (*id.* at 179:24–183:7), has failed to seek any references, (*id.*), and has not given her counsel any instructions as to their representation (*id.*). These facts tend to weigh against a finding of adequacy. *See In re Elec. Data Sys. Corp.*, 224 F.R.D. 613 (representatives found to be adequate because, among other things, representatives had researched and selected the law firms that would prosecute the case); *Umsted*, 2003 WL 79750, 2003 U.S. Dist. LEXIS 218 (class representative not adequate because, among other things, he had not investigated the background and experience of class counsel).

A class representative must show "an inclination to take [an] active role in monitoring class counsel's activities." *Kase v. Salomon Smith Barney, Inc.*, 218 F.R.D. 149 (S.D.Tex. 2003). Not only has Ogden failed to take such an active role, but her deposition demonstrates the great disparity between her counsel's involvement and her own. Furthermore, Ogden's failure to monitor her attorneys, or even research their suitability as class counsel, is indicative of her lack of

---

7. The Court notes that, in reviewing Ogden's deposition, her counsel repeatedly made lengthy and argumentative objections. These objections often, directly or indirectly, either informed Ogden of what her response should be or attempted to explain Ogden's lack of ability to respond to the question posed. This behavior militates toward a conclusion that Ogden's counsel has had an enormous impact on her information and involvement. In many instances, it is difficult to ascertain whether Ogden's responses to a question are based solely on her own knowledge or on the response she inferred to be appropriate from her counsel's objection. A competent class representative should be able to appear at and participate in a deposition without such extensive involvement by her attorney.

participation in the litigation of her claims. *See In re United States Liquids Secs. Litig.*, 2002 U.S. Dist. LEXIS 26713 ("a class representative is not adequate if he has 'so little knowledge of and involvement in the class action that [he] would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys.'") (citation omitted).

Even putting aside the gaps in Ogden's factual knowledge of her claims, her dedication to the pursuit of the class's interests and to the certification of the class is not commensurate with the obligation she wishes to undertake. The responsibility Ogden seeks to assume is a great one, and her corresponding commitment to the cause and to the class must be equally great. "[N]amed plaintiffs might not qualify as adequate class representatives because they do not possess the personal characteristics and integrity necessary to fulfill the fiduciary role of class representative." *Kelley*, 139 F.R.D. at 409 (citing *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir.1987)). Ogden's level of involvement in and commitment to her class action is questionable, thus raising doubt as to her "willingness and ability . . . to take an active role in and control the litigation." *Berger*, 257 F.3d at 479.

As discussed previously, Ogden's lack of involvement in soliciting and monitoring her attorneys, and in maintaining that she has a sufficient factual understanding of the case, is questionable. In addition, Ogden failed to appear at the hearing regarding class certification. In other instances such a failure to appear might not be dispositive, but in the present circumstance Ogden's suitability as a class representative was severely questioned in both Defendants' cross-motions to deny class certification and in Defendants' responses to Ogden's motion to certify. Defendants' extensive and compelling challenges to Ogden's adequacy made Ogden's appearance at the hearing both vital and necessary for the presentation of her arguments. Furthermore, the Court rescheduled the hearing date, in response to Ogden's motion for a continuance, in order to secure Ogden's presence. In her motion for continuance, Ogden stated that she had a previously scheduled job commitment on the date originally set for hearing, and that she "believe[d] that her participation and testimony at the hearing [wa]s crucial to class certification." (Mot. for Continuance at 2, ¶ 4.b.) Ogden further stated that, "she and the class of plaintiffs she seeks to represent w[ould] be irrevocably prejudiced if she [wa]s not afforded a continuance . . . in order that she [could] appear and testify in person." (*Id.*) Following the Court's acceptance of her averments and the granting of a continuance, Ogden failed to appear at the certification hearing and failed to notify Defendants prior to their appearance at the hearing that she would no longer be in attendance. Ogden's failure to appear, especially given that she herself insisted that her participation and testimony was crucial, reflects her lack of commitment to her cause and a failure to recognize that her actions affect every other participant in the action. Defendants relied on the fact that she would be appearing for questioning; her failure to appear affected the arguments that they had already planned to make and their resulting presentation to the Court. Furthermore, Ogden's absence at the hearing endangered the certification of the class, thereby prejudicing all class members, and affected her attorneys' performances since she had only notified her counsel that she would not be appearing the night before the hearing.

Ogden's counsel stated at the hearing that her reason for not appearing was that her sister had experienced a medical emergency and that she had to care for her sister's children. The Court then required Ogden to provide an affidavit explaining her failure to appear with particularity, specifically stating that "if she had to provide child care for her sister's children, [the Court] would certainly want to know why no one else in the whole wide world was available to perform that function." (Certification Hearing at 102:14–102:17.) The Court also stated, "She's wanting to perform a very important role before this Court, and for her to not be here, I would think she would need to understand that she was about the only one who could reliably take care of those children." (*Id.* at 102:18–102:21.) Ogden provided the affidavit to the Court late.[8] In it, she informed the

---

**8.** Although the Court normally does not take particular note of a filing that is presented an

hour past its deadline, Ogden's tardy filing of her

Court that her cousin and close friend had experienced emergency complications with her pregnancy the weekend before the Court's hearing. (Ogden Aff. at ¶ 3.) While Ogden lived close to the hospital, her cousin's home was over two hours away. (*Id.* at ¶ 4.) Ogden was informed that her cousin's children "needed to be closer to the hospital," and her cousin and her cousin's husband then asked Ogden if the children could stay with Ogden in her home. (*Id.* at ¶ 5-6.) The plan was to drive the children to Ogden's home on the day of the hearing. (*Id.* at ¶ 6.) Ogden further stated:

> The nature and depth of my relationship with my cousin and my commitment to her, her family and her children's well being, required that I agree—in fact, I would not have said 'no.' In addition, not only am I extremely close in a family/loving sense to my cousin and her children, but I am one of the few people with whom my cousin would entrust her children within an immediate proximity to the hospital.

(*Id.*) On the date of the hearing, the date Ogden expected her cousin's children to arrive at her home, Ogden was informed that her cousin's doctor did not believe the children should come to the hospital that day, and that the children would not be coming to her home after all. (*Id.* at ¶ 7.)

While the Court is sympathetic to Ogden's relationship with her cousin, the court finds unpersuasive her explanation of why she could not attend a hearing that had been rescheduled to avoid, in her words, "irrevocable[ ] prejudice." Ogden has failed to comply with the Court's mandate to explain "why no one else in the whole wide world was available to [watch the children]." Absent from her affidavit is any indication of why no one else could watch the children at her home.

Ogden has a husband, her cousin has a husband, and the Court assumes Ogden knows other people in her community. Furthermore, considering the important role Ogden seeks to assume, her decision to stay at home when others could have potentially taken care of her cousin's children fails to show the willingness and dedication to the class necessary of any class representative. Instead of justifying her absence, Ogden's affidavit only shows that her reasons for not being at the hearing and for giving such short notice to all involved parties indicate her lack of commitment to acting as class representative and her difficulty with complying with court orders.

Considering all of the evidence weighing against Ogden's adequacy—her lack of knowledge and understanding, her level of reliance on-counsel, and her failure to demonstrate her willingness and ability to proceed as class representative—the Court finds that she cannot sustain the burden placed on her in Rule 23(a)(4).[9] Instead of demonstrating her willingness and ability to act as a class representative, the Court concludes that Ogden has instead shown that she lacks the requisite degree of zeal necessary for the great responsibility that she seeks to assume. *See In re Elec. Data Sys. Corp.*, 224 F.R.D. 613; *Umsted*, 2003 WL 79750, 2003 U.S. Dist. LEXIS 218; *Krim*, 210 F.R.D. at 589; *In re Am. Commer. Lines, LLC*, 2002 WL 1066743, 2002 U.S. Dist. LEXIS 10116.

Ogden bears the burden of proof on the adequacy of representation. Ogden has failed to carry that burden. As stated by the Fifth Circuit in *Berger*:

> Precedent and due process concerns require that courts protect potential class members by ensuring that the named

---

affidavit, especially in view of the reasons that the affidavit was required, coupled with her failure to appear, can only reinforce a conclusion that she is unable to adequately represent the class.

9. The Court further notes that, even if these impediments did not exist, other adequacy issues would still remain. Some putative class members signed releases regarding their potential claims against AmeriCredit, and this could additionally affect Ogden's suitability as a class representative. *See Swoope v. BellSouth Telecomms.,* Civil Action No. 1:97cv181–D–D, 1998 WL

433952, at *4–5, 1998 U.S. Dist. LEXIS 11416, at *14 (N.D. Miss. June 23, 1998) ("When the purported class representative has not executed a *release and need not establish that the release is defective in his individual case,* serious questions are raised concerning the typicality of the class representative's claims and the adequacy of the representative of other class members.") (citing *Melong v. Micronesian Claims Comm'n,* 643 F.2d 10, 15 (D.C.Cir.1980)). Since the Court has already concluded that Ogden is an inadequate representative, the Court declines to analyze the impact of the releases in the instant case.

plaintiffs demonstrate their adequacy. Class action lawsuits are intended to serve as a vehicle for capable, committed advocates to pursue the goals of the class members through counsel, not for capable, committed counsel to pursue their own goals through those class members.

*Berger,* 257 F.3d at 484.

Since Ogden has failed to satisfy the burden imposed by Rule 23(a)(4), rendering certification of the class inappropriate, the Court declines to reach the issues of numerosity, typicality, and commonality.

## IV. CONCLUSION

Therefore, it is ORDERED that plaintiff Ogden's Motion for Class Certification [doc. # 93–1] is DENIED. It is further ORDERED that defendant AmeriCredit's and the individual defendants' Cross Motion to Deny Class Certification [doc. # 100–2] and T. Rowe Price's Cross Motion to Deny Class Certification [doc. # 103–1] are GRANTED.