Frank **STOFFELS,** Linda Villafane Burnie Joe Dunn, Jack Guiliani, and James Belcher, on behalf of the SBC Telephone Concession Plan and all other persons similarly situated, Plaintiffs,

v.

SBC COMMUNICATIONS, INC., and The SBC Telephone Concession Plan, Defendants.

No. CIVASA05CA0233WWJ.

United States District Court, W.D. Texas, San Antonio Division.

Oct. 3, 2006.

R. Joseph Barton (argued), Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, D.C., and Marc I. Machiz, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Philadelphia, PA, and Les Mendelsohn of Les Mendelsohn & Associates, San Antonio, TX, for plaintiffs.

John L. Carter (argued), Logan E. Johnson and Patrick M. Dennis, Vincent & Elkins, Houston, TX, for defendants.

### CLASS CERTIFICATION ADJUDICATION AND ORDER

JUSTICE, Senior District Judge.

Plaintiffs in this action are: Frank Stoffels, a retiree of SBC Pacific Telesis, a subsidiary of Defendant SBC Communications, Inc. ("SBC"); Linda Villafane, a retiree of Ameritech, also a subsidiary of SBC; James Belcher, a retiree of Illinois Bell, now an SBC Company; Bumic Joe Dunn, a retiree of Southwestern Bell, a subsidiary of SBC; and Jack Guiliani, a retiree of Pacific Telesis, now a subsidiary of SBC.[1] Plaintiffs bring this action on behalf of themselves, and a putative class.[2] Through this action, they seek civil enforcement under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001–1461, concerning SBC Communications, Inc.'s (hereinafter, "Defendant") averred establishment and management of an alleged "defined benefit" retirement plan known as the "Telephone Concession."[3]

Before the Court is Plaintiffs' Motion to Certify a Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, Therein, Plaintiffs request that the Court certify two "issues" Classes in this action, and therefore proffers two definitions.[4] Plaintiffs move that the first putative class (hereinafter "Class I") consist of themselves and persons falling into following categories:

1. Retirees of an SBC Company (including, but not limited to Ameritech, Pacific Telesis, and Southern New England Telephone and any predecessor) who were receiving a Telephone Concession after they retired, anytime from January 1, 2002 to the present and who lived outside the SBC Service Area; or

2. Current or former employees of any SBC Participating Company with more than five years of service with an SBC Participating Company as of June 1, 2005, who were eligible or might become eligible to receive an Out-of Service Telephone Concession after they retired; or

3. Members of the immediate family of any person in Group 1 or Group 2, including surviving spouses and the retiree dependents (and including Registered Domestic Partners of Pacific Telesis employees and retirees) during the time that SBC had a policy to provide employees of such SBC Participating Companies with a Telephone Concession after retirement;

regarding the claims asserted by Plaintiffs, on behalf of the "Plan", against Defendant SBC.[5]

1. Docket No. 54 (Corrected Second Am. Compl., ¶¶ 8–12).

2. *Id.* (Compl. at ¶ 5)

3. Variously described as the "Retiree Concession" and the "Employee Discount." *Id.* (Compl. at ¶ 1).

4. "(4) When appropriate (A) an action may be brought or maintained as a class action with respect to particular issues..." Fed.R.Civ.P. 23(c)(4)(A).

5. Docket No. 54 (Compl. at ¶ 62). The language—"on behalf of the 'Plan'"—employed by Plaintiffs, engenders some confusion. Plaintiff argues that the claims they assert under Class I are not on behalf of each individual, but are "derivative-style" claims, brought in the interest of the "Plan" itself. In support of this characterization, Plaintiffs cite *In re Elec. Data Sys. Corp. "ERISA" Litig.,* 224 F.R.D. 613, 623 (E.D.Tex.

2004). Docket No. 66. In that case, the Plaintiffs were current and former employees of EDS, who are or were participants in the employer's 401(k) retirement plan, suing EDS for breach of fiduciary duty in its management of the retirement plan.

However, in *EDS*, the retirement plan was established. Oppositely, in this case, the existence of the averred Plan is the central, disputed issue. The class members share a common interest-the establishment of the Plan. However, they do not litigate this matter derivatively, as it is heavily disputed whether a "Plan"-in the interest of which they may act-exists. Thus, the Court declines to endorse Plaintiff's characterization of the Class I claims as "derivative-style," in the interest of the "Plan," at this juncture. Therefore, the "Plan", as discussed herein, is entirely provisional, and this language is employed for class certification purposes only.

Plaintiffs define the second putative class (hereinafter, "Class II") as consisting of themselves and "of all participants and beneficiaries of the Telephone Concession Plan at a any time from January 31, 2003 to October 1, 2005 for the Benefits Claims Pursuant to ERISA § 502(a)(1)(B) against the Plan." [6]

On June 23, 2006, a hearing was held on the plaintiffs' motion for class certification. Having heard oral argument and considered the moving and opposing papers, this Court finds that both of Plaintiffs' proposed classes are sufficiently defined, that both classes meet the requirements of Rule 23(a),[7] that the Class I claims are appropriately certified under 23(b)(1) and 23(b)(2), and the Class II claims are appropriately certified under 23(b)(3).[8] For the reasons stated herein, Plaintiffs' motion will be GRANTED.

### Fed. Rule Civ. Pro. 23

■ Under Federal Rule of Civil Procedure 23(c)(1)(A) and (B), the Court must "determine by order whether to certify the action as a class action" and, if it determines that it should do so, "define the class and the class claims, issues or defenses" in the order certifying the class.[9] While this Court has wide discretion in determining whether to certify a class, this discretion must be exercised within the bounds of Rule 23.[10] In the processing of determining whether a class should be certified, the Court is required to conduct rigorous analyses of Rule 23's prerequisites.[11] And although "class certification hearings should not be mini-trials on the merits of the class or individual claims," the Court must, nonetheless, go beyond the pleadings and examine the evidence to "understand the claims, defenses and relevant facts and applicable substantive law" in order to make a meaningful class certification decision.[12] Therefore, the Court must find, and not merely assume, that the facts favoring class certification are present.[13]

Rule 23(a) lists four prerequisites that must be met before a class action can be maintained. Those are numerosity, common questions of law or fact, typicality of the claims of the representative plaintiffs, and adequacy of representation by the named plaintiffs.[14] Both putative Class I and Class II must independently meet the requirements of Rule 23(a).[15]

In addition, each class action must meet one of the conditions in Rule 23(b). The Court notes its responsibility to endeavor to select the most appropriate subsection under 23(b) through rigorous analyses, and not

---

**6.** *Id.* The language—"...against the Plan"—reflects the nature of the relief sought through the Class II claims for benefits under ERISA § 502(a)(1)(B). The initial assessment in this case is whether the "Telephone Concession" is an ERISA plan. If it is, the issue of benefits under that plan may be litigated; it is the "Plan", and/or the Defendant, who would be liable for benefits due.

**7.** "Rule 23(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a).

**8.** "...(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition..." one of the requirements of Rule 23(b) is met, Fed.R.Civ.P. 23(b).

**9.** Fed.R.Civ.P. 23(c)(1)(A) and (B).

**10.** *Castano v. American Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996) (citing *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981)).

**11.** *Id.* (citing *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

**12.** *Unger et al. v. Amedisys Inc., et al.*, 401 F.3d 316, 321 (5th Cir.2005).

**13.** *Id.*

**14.** Fed.R.Civ.P. 23(a).

**15.** The Class I ("Plan") claims includes all Plan participants and beneficiaries and thus all Class II ("Benefit") class members. Because of the significant overlap in the membership of the two putative class, both will be considered together for purposes of Rule 23(a), and, as well, the adequacy of the class definitions. However, each will be considered, in turn, to ascertain the

merely defer to Plaintiffs' recommendations or to certify the class under the first linguistically applicable subsection therein.[16] This is important, as the ultimate decision to certify the class under a particular subsection informs the notice and opt-out rights of each putative class member, as well as his or her future opportunity to opt out and litigate on his or her own behalf.[17] Here, Plaintiffs request "divided certification"—that is, to certify the declaratory or injunctive issues of the suit under Rule 23(b)(2) and the damages issues under Rule 23(b)(3).[18] Plaintiffs, as movants for class certification, bear the burden of demonstrating that a class action is appropriate and that all requirements of Rule 23 are satisfied.[19]

### Class Definition

■ As noted above, Plaintiffs propose two separate classes for certification, seeking to certify each according to a specific issue in this litigation, pursuant to Rule 23(c)(4)(A).[20] Class I specifically relates to Plaintiffs' claims against Defendant on behalf of the averred "Plan." The class consists of current employees and former employees eligible to receive the Retiree Telephone Concession outside the SBC service area, retirees of an SBC company in receipt of the alleged "Telephone Concession" from January, 2002, to the present, and family members of either of these groups.[21] Class II is particularly for the Benefits Claims, under ERISA,against the Plan, and consists of all participants and beneficiaries of the Telephone Concession Plan between January 31, 2003, and October 1, 2005.[22]

Defendants challenge the Plaintiffs' proposed class definition on three fronts. First, they argue that the Plaintiffs' proposed class members are not presently ascertainable by reference to objective criteria.[23] Secondly, Defendants contend that it is administratively infeasible to determine whether a given individual is a member of the class. And finally, they maintain that both classes erroneously assume the existence of an ERISA plan, which is the subject in dispute here.[24] In essence, Defendants argue that the class membership is not presently ascertainable because the alleged "Telephone Concession" is not a "defined benefit" retirement plan, pursuant to ERISA, 29 U.S.C. § 1002(35); therefore, the Plaintiffs' class definitions encompass little more than thousands of individuals with no common thread and no objective means of identification.

Defendants' attack on the Plaintiffs' putative class definition drives straight to the merits. This is not unusual, as class determinations generally involve considerations that are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action."[25] When the consideration of whether

---

appropriate subsection for certification under Rule 23(b).

**16.** See *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir.1999).

**17.** Fed. Rule Civ. Proc. 23(c)(2).

**18.** Docket No. 41 (Mem. in Supp. of Pls.' Mot. for Class Cert.); (See *Jefferson.*, 195 F.3d at 898 (explaining that "It is possible to certify the injunctive aspects of the suit under Rule 23(b)(2) and the damages aspects under Rule 23(b)(3), achieving both consistent treatment of class-wide equitable relief and an opportunity for each affected person to exercise control over the damages aspects")).

**19.** *Berger v. Compaq Computer Corp.*, 257 F.3d 475, 479 (5th Cir.2001)

**20.** Fed. R. Civ. P 23(c)(4)(A).

**21.** Docket No. 54 (Compl. at ¶ 62).

**22.** Expressly excluded from both Classes are "SBC's officers and directors, including officers and directors of any SBC Company (or subsidiary affiliate, predecessor thereof), any persons who acted as a fiduciary of the Plan, participated in the decision to enact the February 2003 Amendment, the April 2004 Amendment, the June 2005 Amendment, or the October 2005 Amendment, or representing SBC in this litigation and any immediate family member, representative, heir, successor, or assign of any such excluded party." *Id.*

**23.** Specifically, SBC argues that it is impossible to presently identify all the members of Plaintiffs' proposed Class I, because it is impossible to determine whether an individual might move their residence to an "Out–of–Service" area upon retirement. Docket No. 49 (Def.'s Resp. to Pls.' Mot. for Class Cert., pg. 10–11).

**24.** *Id.*

**25.** *Bell v. Ascendant Solutions, Inc.*, 422 F.3d 307, 312 (5th Cir.2005), quoting *Coopers & Lyb-*

a class definition is legally sufficient overlaps the merits, the Court must make a preliminary inquiry into the merits.[26]  Indeed, in order to make a meaningful determination of certification issues, the Court must "understand the claims, defenses, relevant facts, and applicable substantive law."[27]  However, the strength of a plaintiffs' claim should not affect the certification decision, since that determination is reserved for trial[28].

Simply put, Plaintiffs' proposed definitions encompass current employees and former employees eligible to receive the alleged "Telephone Concession," which Plaintiffs intend to establish as a "defined retirement" benefit plan, pursuant to ERISA, 29 U.S.C. § 1002(35), and those retirees already in receipt of the averred Plan's benefits from 2002 to present.[29]  The objective criterion proposed to identify current and former employees is "eligibility" under the alleged Plan, and the objective criteria proposed to identify the retirees is the actual receipt of the alleged "Telephone Concession" benefit from 2002 to present.

Of course, as Defendant points out, this implicates a determination of whether a plan, upon which eligibility may be premised, actually exists.  If the allegation that the Plan is a "defined retirement" benefit plan under ERISA is legally insufficient, then objective "eligibility" under this plan would indeed be a useless measure.  That is not the case here.  In its prior Order Denying Defendant's Motion to Dismiss, this Court held that the "Telephone Concession," as set forth

in Plaintiffs' Amended Complaint, did state a legally sufficient claim, alleging an ERISA "pension plan" as defined in 29 U.S.C. § 1002(2).[30]

Further, at the certification hearing and in supporting memoranda, the Plaintiff's convincingly argued that employees[31] purportedly eligible, as well as retirees allegedly in receipt of benefits (and spouses of employees and retirees), under the averred benefits plan are, or will become, ascertainable.[32]  In addition, Plaintiffs provided the concrete means by which they intend to identify the individual class members in both putative classes.[33]  Therefore, the Court finds that membership according to Plaintiffs' proposed class definitions is sufficiently ascertainable and based on objective criteria.[34]

### Rule 23(a) Requirements

#### Numerosity

The central considerations in determining whether plaintiff classes meet the Rule 23(a) numerosity requirement are the size of the class and whether joinder might be a practical and manageable alternative to class action litigation.  Practicability of joinder depends on size of the class, ease of identifying its members and determining their addresses, facility of making service on them if joined and their geographic dispersion.[35]  Here, the Court finds that Plaintiffs have sufficiently met the numerosity requirement for both classes, and demonstrated that joinder of all allegedly affected members of the

---

*rand v. Livesay,* 437 U.S. 463, 469, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978).

**26.**  *Id.* The Court notes that "findings made for resolving a class action certification motion serve the court *only* in its determination of whether the requirements of Rule 23 have been demonstrated." *Id.* (emphasis in original).

**27.**  *Castano,* at 744.

**28.**  *Id.*

**29.**  Docket No. 41

**30.**  Docket No. 32 (Order Den. Def.'s Mot. to Dismiss).

**31.**  The word "employees" refers to both current and former employees.

**32.**  *See* Docket No. 66 (Pls.' Reply Mem. in Supp. of Mot. for Class Cert) (e.g., stating that persons described in the proposed class should be identified by Defendant's records, and Defendant has already identified the categories of eligible persons in response to Interrogatories).

**33.**  *Id.* at 6, n. 9. In addition to gleaning the information from the Defendant's own records, the Plaintiff has requested, but not yet received, data from "Accordia National" the alleged "third party administrator" of the averred plan.

**34.**  The Court notes that if concerns regarding the class definition should arise in the course of the litigation, the Court may alter or amend this Order before the decision on the merits.  Fed. R.Civ.P. 23(c)(1)(D).

**35.**  *Garcia v. Gloor,* 618 F.2d 264, 267 (5th Cir. 1980).

class would be highly impracticable (i.e., extremely difficult or inconvenient).

■ At the hearing, and in supporting memorandum, the Plaintiffs reasonably estimated that the proposed class consists of more than 40,000 members-individual retirees who are entitled to receive the alleged "out-of-service-area" telephone concession benefit (hereinafter "the benefit"), "out-of-service-area" active employees who are likely to become eligible to receive the benefit upon retirement, and spouses who are entitled to, or will become entitled to the benefit.[36] This good faith estimate was uncontested at the hearing. This large number of putative class members obviates the impracticality of joining each class member individually, accurately identifying and serving them. In addition, the Plaintiffs also established that the prospective class members were geographically dispersed, and could be found throughout the United States.[37]

Defendants' major objection to Plaintiffs' claim of numerosity is that it is presently impossible to identify all of the individuals potentially included in the proposed class, since, for example, whether a prospective retiree will move into an "out-of-service" area in the future is undetermined.[38] However, the existence of presently unknown or unidentifiable class members does not defeat the numerosity requirement. The Fifth Circuit unequivocally answered this question, by stating: "It is hard to see how a class already numerous enough can become insufficiently numerous through the inclusion of an unknown number of additional members."[39]

In such a case, the numerosity requirement is clearly met, as joinder of unknown individuals is clearly impracticable.[40]

### Commonality

The undemanding commonality test of Rule 23(a) is met, when there is "at least one issue whose resolution will affect all or a significant number of the putative class."[41] The interests and claims of the various plaintiffs need not be identical; however, the challenged conduct must be premised on a ground that is applicable to the *entire* class.

■ Here, shared issues of law and fact satisfy the commonality requirement. The initial, and overwhelming issue in this case is whether the Retiree Telephone Concession Benefit constitutes a "defined benefit plan", within the meaning of ERISA, § 3(35), 29 U.S.C. § 1002(35).[42] The disposition of this issue would certainly advance this litigation. Beyond this threshold issue, shared issues of law and fact include whether Defendant is the Plan sponsor or administrator under the plan; whether ERISA was violated by Defendant's alleged mismanagement of the averred plan; whether the law requires reformation of the averred plan, and appointment of an independent fiduciary to administer the averred plan to achieve compliance under ERISA; and what benefits, if any, must be paid to class members under the plan, as reformed.[43]

Defendant contends that even after the question of whether a "defined benefit plan" exists under ERISA is resolved by the Court, this will do little to advance the

---

**36.** Docket No. 70 (Tr. of Class Cert. Hr'g) This estimate applies to both Class I and Class II claims.

**37.** *Id.*

**38.** Docket No. 49 (Def.'s Resp. to Pls.' Mot. for Class Cert.).
To the contrary, as Plaintiff acts out in their complaint and memoranda supporting class certification, class member individuals purportedly eligible under the averred benefits plan are readily ascertainable. Whether these allegedly eligible individuals will ever, in fact, move into an "out-of-service" area, thereby triggering the provisions of the alleged plan, remains uncertain, but this does not defeat numerosity. *See* Docket No. 66.

**39.** *Phillips v. Joint Legislative Comm. on Performance & Expenditure*, 637 F.2d 1014, 1022 (5th Cir.1981)

**40.** *Id.*

**41.** *Forbush v. J. C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir.1993) (quoting *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir.1982)).

**42.** Docket No. 66.

**43.** Docket No. 54. The Court notes that this list is not necessarily exhaustive of common issues of law and fact.

claims of each class member, because "the complex and individualized task of determining whether each putative plaintiff was eligible for a plan, which plan, and under what circumstances" would remain.[44] However, this assertion defies common sense, as some kind of individualized proof is often necessary to ascertain whether a particular individual qualifies as a class member. In addition, commonality is not defeated by the possibility that individual class members may have different circumstances and/or significantly different benefits.[45] In *Forbush v. J.C. Penney*, the Fifth Circuit held that "the necessity for even somewhat complex individual calculations does not supply a basis for concluding" that a plaintiff has not met the commonality requirement.[46] Nor does significant variation in the benefits provided to individual class members destroy commonality.[47] The common issues of law and fact, described above, remain in tact.

### Typicality

The typicality test is similarly undemanding, and is met "if the class representatives' claims are typical of, but not necessarily identical to, those of the class; class representatives should have the same interests and have suffered the same injuries as others in the putative class, and the representatives' and class members' claims need only share the same essential characteristics, i.e., arise from a similar course of conduct and share the same legal theories."[48] The focus is less on the relative strengths and weaknesses of the named and unnamed plaintiffs' cases, than it is on the "similarity of the legal and remedial theories behind their claims."[49]

The Court finds that the claims of the class representatives are typical of the entire class, as to both Class I and Class II. The same legal theory-that the "Telephone Concession" is an ERISA defined benefit plan-underlies every claim brought in this action. The representative members, and every absentee class member encompassed by the class definition, are all allegedly eligible to receive the "Telephone Concession" benefits. Additionally, the remedial theories pursued are similar, when not identical. The equitable relief sought by the representative members is identical to those of the class: Plaintiffs seek declaratory judgment that the "Telephone Concession" is a "defined retirement plan" under ERISA § 1002(35), and injunctive relief reforming the averred "Telephone Concession" Plan to comply with ERISA.[50]

The benefits claims, although not identical, are sufficiently similar to satisfy typicality. Plaintiffs request an Order requiring the alleged Telephone Concession Plan to pay benefits, consistent with the Plan, as reformed by injunctive order of this Court. Defendant attacks the similarity of the representative and absentee members' benefit claims, urging the Court to find atypicality because of the great variation in telephone concessions (i.e. benefits) received by proposed class members.[51] However, some difference in the factual underpinnings of the representative and proposed class members' claims does not destroy typicality, as claims need not be completely identical to satisfy typicality requirements.[52] Indeed, factual variations in the administration of the averred "Plan," or in the amount or kind of benefits received under the Plan, may be demonstrated in the course of litigation. However, the course of conduct challenged and the legal theories behind the Benefit claims are shared by all, and therefore typical.[53]

---

44. Docket No. 49.

45. *Forbush*, 994 F.2d at 1106.

46. *Id.*

47. *See id.*

48. *In re Enron Corp. Secs. v. Enron Corp.*, No. H–01–3913, 2006 WL 1662596, at *10, 2006 U.S. Dist. LEXIS 43145, at *50 (S.D. Tex. June 7, 2006).

49. *Jenkins v. Raymark Ind.*, 782 F.2d 468, 472 (5th Cir.1986).

50. Docket No. 54

51. Docket No. 49.

52. *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir.2001).

53. These are, that (1) a "defined benefit" retirement plan was created by Defendant, (2) Defendant is a plan sponsor or administrator, (3) as such, Defendant failed to comply with ERISA in its alleged mismanagement of the plan, (3) class members are entitled to benefits consistent with

Further, Defendant argues atypicality because Insufficient evidence has been presented to show that the representative members' interests are aligned with those of the entire proposed class.[54] The gravamen of this argument is that no plan exists, Defendant is not a plan sponsor or administrator, and therefore the named plaintiffs' claims are not representative of the entire class (as there is no underlying, unifying "plan" for which relief is sought.) This is merely a rehashing of the Defendant's primary argument, reworked for the typicality requirement. For the reasons stated above, it too misses the mark.[55]

Accordingly, the representative members will provide the Court with a sufficient factual context in which to fairly adjudicate the interests of all members of the putative class, regarding legal issues involved in this action. Accordingly, the typicality requirement of 23(a) is satisfied.

### Adequacy of Representation

The final prerequisite under Rule 23(a) is a finding that "the representative parties will fairly and adequately protect the interests of the class."[56] The representative plaintiffs must fairly and adequately represent the interests of the class by meeting two requirements: (1) the named representatives' interest must not be antagonistic to those of other class members; and (2) the representatives' attorneys must be able to prosecute the action vigorously.[57] The burden is on the party

seeking certification to demonstrate adequacy.[58]

■ The Court finds that, in this case, the named plaintiffs' interests and the other class members' interests are aligned. First, the common interests shared by the class representatives and class members are demonstrated in the satisfaction of the commonality and typicality tests, as discussed above. Although Defendant contends that these interests are possibly antagonistic for several reasons, none of the potential conflicts present antagonism within the class sufficient to defeat adequacy.[59]

■ In addition, Defendant argues that the representative plaintiffs have "completely ceded control of this litigation to their attorneys" and have little understanding or participation in this lawsuit.[60] This lack of knowledge, according to Defendant, rises to a level which renders the representative plaintiffs wholly inadequate to serve as class representatives.[61] The Fifth Circuit describes the adequacy requirement as mandating an inquiry into "the willingness and ability of the representatives to take an active role in and control the litigation to protect the interests of absentees."[62] Therefore, a class representative must possess a "sufficient level of knowledge and understanding to be capable of 'controlling' or 'prosecuting' the litiga-

the terms of the averred Plan, despite potential variation in the amount or kind of those benefits.

54. Docket No. 49.

55. Further, the Court notes the vexing circularity of this line of argument cannot be sustained. It is unreasonable to assert that typicality bars the representative members from seeking to establish, on behalf of a class, that a defined retirement benefit plan exists under ERISA, on the grounds that an ERISA plan is not established.

56. Fed.R.Civ.P. 23(a)(4).

57. *Henry v. Cash Today*, 199 F.R.D. 566, 569 (N.D.Tex.2000).

58. *Berger*, 257 F.3d at 479.

59. For example, Defendants argue that the named Plaintiffs do not adequately represent the entire class because the five plaintiffs retired

from only three of the four SBC subsidiaries, at issue here. In addition, because the named Plaintiffs may have received different telephone benefits from one another and other members of the class, Defendants argue that there is a possibility of conflicts of interest. Docket No. 66.

However, Defendants concerns over potential conflicts of interest are too speculative to present a cognizable antagonism between the named Plaintiffs and the absentee class members sufficient to overcome Plaintiffs sufficient demonstration of adequacy. *See In re EDS Securities Litigation*, 226 F.R.D. 559, 569 (E.D.Tex.2005) (holding that "potential complications that may arise during the damages phase of a trial do not bar a finding of adequacy").

60. Docket no. 75

61. *Id.*

62. *Berger*, 257 F.3d at 484.

tion."[63]   However, civil litigation under ERISA is a complex undertaking, and in complex litigation contexts, the Fifth Circuit recognizes that "certainly, class representatives need not be legal scholars, and are entitled to rely on counsel."[64]

In sum, class representatives must have sufficient knowledge and be able to take an active role in, and control litigation, on their own accord, yet they are entitled to rely on, and be guided, by counsel.  It is between these two positions that the adequacy of the class representatives' knowledge and understanding must be considered.  As previously stated, Defendant asserts that the class representatives' knowledge is detrimentally inadequate.  To the contrary, Plaintiffs' counsel has provided documents from each class representative, setting forth their signed agreement to act as class representative, and signed statements acknowledging their duties as class representatives.[65]  While this evidence may not be sufficient, standing alone, Plaintiffs have additionally submitted depositions in which class representatives attest to their level of personal knowledge, willingness and ability to prosecute the case,

and understanding of the claims underlying this action.[66]

The class representatives' deposition statements do not demonstrate a complete legal mastery of the many complex claims and potential variations in class member benefits presented here.  However, it cannot be said that the representatives are inadequate parties to represent this class in its pursuit to establish that the "Telephone Concession" is a unitary, defined benefit plan under ERISA.  It would be unreasonable to require class representatives to know the specific, variant terms in the potential benefits of every absentee class member in this action.  Such a demanding standard need not be met to adequately represent the absentee class members' interests.  The representative class members are entitled to work with, and rely upon, their counsel in pursuing their claims and navigating the complicated legal and factual issues associated with ERISA law.

Therefore, after reviewing these depositions, the Court is satisfied that the class representatives in this action have sufficient personal knowledge and understanding of the case.[67]  Additionally, the Court finds that the class representatives are willing and able to

---

63.  *Id.*

64.  *Id.*

65.  Docket No. 41, & Pls.' Ex. G.

66.  Docket No. 69.

67.  The Court has considered the depositions of all proposed representative class members.  For the sake of brevity, bolstered by the rule that "...as long as one of the representatives is adequate, the requirement (of Rule 23(a)(4)) will be met", 7A C. Wright *et al.*, Federal Practice and Procedure, the Court will only specifically reference the deposition of Mr. Stoffels, the named plaintiff in this case.
1.  Understanding of Class Action Litigation:
Q:  What was your understanding at that time in March 2005 of a class action?
A:  "My understanding of a class action would be that I would be-my name would be out, I would be the lead on that as for as filing suit, but all of my other counterparts that have... been retired.... from Pacific Bell or SBC Communications would also join me in this suit, as we were all affected by it." (Pg 40).
2.  Defendant contends that Plaintiffs have entirely ceded control of the litigation to their attorneys, and the representative class members actu-

ally have had little participation in this lawsuit, or understanding of the claims they are asserting.  But, to the contrary, Mr. Stoffels stated that he reviewed the complaints in this matter before they were filed, and was aware of, reviewed and understood changes made to the amended complaint, etc. (71—73).  These statements militate against Defendant's argument that "...capable committed counsel" is pursuing "their own goals through class members" in this action.  Docket No. 75.
3.  Knowledge and Understanding of facts and Underlying Legal Theory:
Q:  ...I want to know what factual basis you have for saying that there is an entity called the SBC Telephone Concession Plan.
A:  "...It says telephone concession on the W–2 forms that I get.  And that's where I derived it from, that they (SBC)you know, that's a parent company, it's their program, they're administering it through the other companies." (156).
Regarding the alleged changes to the concession, he stated: "...we received a notification through SBC communications that they were doing that.  They sent a letter out letting us know that our telephone concessions rates were going down." (22) Later, Mr. Stoffels refers to a desire to reinstate concession benefits for himself and all those similarly situated. (114).

take an active role in and control the litigation, and to do so on their own behalf and on the behalf of the absentee class members.[68]

The Court also finds that the named plaintiffs' counsel is qualified to vigorously pursue the interests of the class. Class counsel has presented evidence that they are knowledgeable and experienced in class action litigation, and has supplied the Court with declarations specifically regarding extensive experience with ERISA class actions, and Defendant does not challenge the adequacy of class counsel.[69] For this, and the aforementioned reasons, the Court finds that the representative parties will fairly and adequately protect the interests of the class.

### Rule 23(b) Requirements

■ Plaintiffs request "divided certification"—that is, to certify the declaratory or injunctive aspects of the suit under Rule 23(b)(1) and/or 23(b)(2) and the damages aspects under Rule 23(b)(3).[70] Divided certification is appropriate only where it permits fair presentation of the claims and defenses and materially advances the disposition of the litigation as a whole.[71] Plaintiffs, as movants for class certification, bear the burden of demonstrating that a class action is appropriate and that all requirements of Rule 23 are satisfied.[72]

■ The Court is satisfied that certifying the class in this manner is proper, and will best achieve the ends of this litigation. Certifying the declaratory and injunctive Class I claims under Rule 23(b)(1) and (b)(2) will result in consistent treatment of class members, as well as non-class members, and provide one standard of conduct, upon resolution of this case, by which Defendant may comply. Perhaps most importantly, it will provide a single answer to the dispute over whether the "Telephone Concession" is an ERISA plan. Should the Court find that the "Telephone Concession" is an ERISA plan, certifying the benefit claims (Class II) under Rule 23(b)(3) will provide each individual eligible for benefits under that plan notice, and an opportunity to opt out, thereby protecting their interests.[73]

The Court, hereby, finds that divided certification is appropriate here, and certifies the declaratory or injunctive aspects of the suit ("Class I" claims) under Rule 23(b)(1) and 23(b)(2), and the damages aspects ("Class II" claims) under Rule 23(b)(3).

### Rule 23(b)(1):

Class certification is appropriate under Rule 23(b)(1) when:

> the prosecution of separate actions by or against individual members of the class would create a risk of: (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not party to the adjudications or substantially impair or impede their ability to protect their interests.[74]

The Court finds that prosecution of separate actions concerning members of this class

---

68. Based on Mr. Stoffels' testimony, the Court is satisfied that he is committed to take an active role in the litigation. For example, he stated that: "There was a book that I went to the library and picked out, it was on class action suits... And I just sat there and read it through." (118).

Regarding his responsibilities to the absentee class members, Mr. Stoffels said: "Well, one of them is doing this deposition today, pursuing this on their behalf to try and, you know, reach some kind of an understanding as to what we really should have. Number one, get our concession back the way it was, working on their behalf, reporting to my attorney, working with the attorneys, and testifying, as I am, and going to the

next phase if I have to, if I have to appear in front of a judge." (114).

70. See *Jefferson*, at 898 (7th Cir.1999).

71. *Robinson v. Metro–North Commuter R.R.*, 267 F.3d 147, 167 n. 12 (2d Cir.2001), *cert denied*, 535 U.S. 951, 122 S.Ct. 1349, 152 L.Ed.2d 251 (2002), (quoting *In re Tetracycline Cases*, 107 F.R.D. 719, 727 (W.D.Mo.1985)).

72. *In re Enron Corp.*, 2006 WL 1662596, at *8–9, 2006 U.S. Dist. LEXIS 43145, at *47.

73. *Jefferson*, at 898.

74. Fed. R. Civ. Proc. 23(b)(1).

would, as a practical matter, create risks of inconsistent adjudications, resulting in incompatible standards by which Defendant would be asked to comply. If separate suits were brought in different courts, regarding whether the benefit alleged here is an ERISA plan, the risk is created that one court would decide the matter in the affirmative, and another court would not. This result would have the effect of creating incompatible standards of conduct for Defendant, i.e., they would be required to provide benefits, in compliance with ERISA, to some participants, but could legally forego the plan altogether in the latter scenario. To avoid this result, the Class I claims, which seek to establish that the "Telephone Concession" is an ERISA plan, are appropriately certified under Rule 23(b)(1).

For the same reasons stated above, the Court finds that proceeding with separate actions would result in adjudications which, as a practical matter, would be dispositive of the interests of other class members, not a party to this action. This Court's determination of whether the alleged "Telephone Concession" benefit constitutes a unitary ERISA plan, for which Defendant is responsible, will affect all individuals, class members and non-class members, who satisfy the averred eligibility criteria under the program. Therefore, resolution of this threshold issue with respect to class members will be dispositive of the interests of non-members regarding the benefits due them, according to the outcome of this adjudication.

### Rule 23(b)(2):

Class certification is appropriate under 23(b)(2), if the Defendant has "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." [75] This class action mechanism is appropriate where broad, class-wide injunctive or declaratory relief is moved for, be-

cause these actions involve uniform, group remedies. [76]

The Court finds that Plaintiffs' Class I claims, for declaratory and injunctive relief, merit certification under this subsection. First, the contested conduct in this action is that Defendant, as plan sponsor or administrator of an averred "defined benefit" retirement plan, failed to comply with ERISA in its alleged mismanagement of the plan, grounds which are generally applicable to the class. Second, class members jointly seek a declaratory finding that the "Telephone Concession" is an ERISA plan, injunctive relief ordering Defendant to reform the plan in compliance with ERISA, and an order stating that class members are legally entitled to benefits under the plan. [77]

The Court rejects Defendants' argument that the class should not be certified under this provision, because Plaintiffs' claims for injunctive and declaratory relief are "simply a mechanism for characterizing a claim for monetary benefits as a declaratory judgment of their 'rights'" and "claims for individually based money damages...predominate." [78] This misstates the Plaintiffs' claims and the legal theory behind this action. To the contrary, the pivotal issue in this case is whether the "Telephone Concession" is an ERISA plan, maintained by Defendant. Should the Court find that it is not, the claims for monetary damages will never be considered.

### Rule 23(b)(3)

Certification under Rule 23(b)(3) is appropriate when the Court finds "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication to the controversy." [79] The Rule further provides that the matters pertinent to the findings include:

(A) the interest of members of the class in individually controlling the prosecution or

---

**75.** Fed. R. Civ. Proc. 23(b)(2).

**76.** *See EDS ERISA Litigation,* 224 F.R.D. 613, 628 (E.D.Tex.2004) (citing *Allison v. Citgo Petroleum Corp.,* 151 F.3d 402, 412, 414 (5th Cir. 1998)).

**77.** Docket No. 41.

**78.** Docket No. 75.

**79.** Fed. R. Civ. Proc. 23(b)(3).

defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action [80].

## 1. Predominance

"In order to 'predominate,' common issues must constitute a significant part of the individual cases." [81] As has been repeatedly discussed herein, all of the plaintiffs in this action seek the same kind of relief, under the same legal theories, that is, reinstatement of the "Telephone Concession" benefits due them under a single averred plan, against Defendant, as the entity establishing or maintaining the plan, pursuant to ERISA § 502(a)(1)(B). Defendant has not presented any differences among the individual claims for benefits which would persuade the Court that Plaintiffs have not demonstrated predominance. The Court is satisfied that the factual and legal issues associated with the payment of benefits are common to all class members, and predominate over the individual issues in this case.

Defendant objects that the "individual evaluation of each concession is required to determine whether each concession constituted an ERISA plan, and if so, at what time each plan came into existence, who was responsible for it, who was eligible for it, and under what circumstances" overwhelms the common issues in this case.[82] However, the Plaintiffs' claims allege a *single* plan, administered *only by this Defendant,* exists. Further, the Plaintiffs have requested "divided certification" and have sustained their burden that it is appropriate in this case. Accordingly, the Class I claims will be litigated and decided before the Class II (benefit) claims are even considered (i.e., the Court will have made a finding regarding whether the "Telephone Concession" is a single ERISA plan, maintained by Defendant).

If the Court finds that an ERISA plan exists, the corpus of individualized claims will consist of determinations as to whether each individual meets the requirements to receive benefits under the plan. Determinations of whether given individuals meet the requirements of class membership, and are therefore entitled to benefits, is a commonplace in the class action context. Admittedly, these determinations may be somewhat complex in this case, considering the great potential variation in plan benefits and individual eligibility. However, the determinations will be centered around the terms of the averred plan, as established through the resolution of the Class I claims.[83] Therefore, it cannot be said, at this stage in the litigation, that concern over the potential complexity of benefit determinations outweighs the advantages of maintaining this suit as a class action.

## 2. Superiority

The final requirement to certify a class under Rule 23(b)(3) is a finding that "class action is superior to other available methods for the fair and efficient adjudication of the controversy." [84] Plaintiffs have sustained their burden, and the Court has certified the Class I, or plan claims, under Rule 23(b)(1) and (b)(2). Thus, only one question remains: Is class certification superior to other available methods for the Class II, benefit claims? As a practical matter, the answer is yes. Assuming, *arguendo,* that this Court finds that the "Telephone Concession" is a single ERISA plan, maintained by Defendant, the benefit claims will remain unresolved. The Court might refuse to certify the Class II (benefit) claims as a class, thereby leaving those eligible for benefits under the plan to

**80.** *Id.*

**81.** *Mullen v. Treasure Chest Casino, LLC,* 186 F.3d 620, 626 (5th Cir.1999).

**82.** Docket No. 75

**83.** Plaintiffs urge that individual factual determinations regarding benefits will be accomplished using computer records and objective criteria, thus rendering an evidentiary hearing unnecessary. Docket No. 41.

**84.** The Court reiterates that if concerns regarding the Class II definition should arise in the course of the litigation, the Court may after or amend this Order. Fed. R. Civ. Proc. 23(b)(3)

litigate benefits on their own initiative. This result would not be efficient, in terms of cost, time, or expense.

Further, the relatively small amount of benefits at issue, per individual, militates strongly in favor of class certification.[85] The Court notes that the class is predominantly comprised of individuals of retirement age and their families. The Court expresses a strong skepticism that all of these class members, potentially eligible for benefits under the averred plan, would retain an attorney and/or otherwise undertake the time, expense, and effort required to navigate the complex ERISA benefits claims. As the Supreme Court explained in *Amchem Products, Inc. v. Windsor*.

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring solo action prosecuting his or her rights. A class action solves this problem by aggregating relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.[86]

Defendants contend that the class action is unmanageable because "it is impossible to ascertain the membership of the proposed classes," as well as the "enormous undertaking" that would be required to calculate benefits for individual class members.[87] First, Plaintiffs have established that class membership is ascertainable according to objective criteria, in the satisfaction of the numerosity test, and as established in the finding that the class definition is adequate. Secondly, despite the relatively complex potential benefits determinations presented, benefit eligibility will be centered around the terms of the plan. Further, relatively complex individual determinations are commonplace in the class action context-as explained in the "predominance finding," above.

Therefore, the Court finds that proceeding as a class action is superior to adjudication by other available methods. Class certifica-

tion will promote efficiency and facilitate the protection of the interests of class members; there is no risk of multiple adjudications, nor is there any available information that any similar action is pending; there is no indication that absentee class members would prefer to litigate their benefits on their own accord. No unique jurisdictional, choice of law, or liability issues are raised by Plaintiffs' claims. The Court notes that notice and the opportunity to opt out of this suit will be provided to all individuals included in this class.

## CONCLUSION

Accordingly, for the reasons stated above, the Court finds that the Plaintiffs' satisfy all four prerequisites of Rule 23(a), and the requirements of Rule 23(b). It is, therefore,

**ADJUDGED**, that Plaintiffs' Motion to Certify a Class, pursuant to Rule 23 of the Federal Rules of Civil Procedure, shall be, and is hereby, **GRANTED**, as stated previously.

It is further

**ADJUDGED** and **ORDERED** that this matter will proceed as a class action, for:

Class I, Plan Claims:

1. Retirees of an SBC Company, receiving a Telephone Concession after they retired, anytime from January 1, 2002, to the present and who lived outside the SBC Service Area; and

2. Current or former employees of any SBC Participating Company with more than five years of service with an SBC Participating Company as of June 1, 2005, who were eligible or might become eligible to receive an Out-of-Service Telephone Concession after they retired; or

3. Members of the immediate family of any person in Group 1 or Group 2, including surviving spouses and the retires dependents (and including Registered Domestic Partners of Pacific Tel-

---

**85.** Plaintiffs allege that the amount of benefits at issue, per individual, is "at most, several hundred dollars per year (before taxes)." Docket No. 41.

**86.** 521 U.S. 591, 617, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

**87.** Docket No. 75.

esis employees and retirees) during the time that SBC had a policy to provide employees of such SBC Participating Companies with a Telephone Concession after retirement; and for

Class II: Benefit Claims

4. All participants and beneficiaries of the Telephone Concession Plan at a any time from January 31, 2003, to October 1, 2005, for the Benefits Claims Pursuant to ERISA § 502(A)(1)(B) against the Plan

It is further **ORDERED**

that the parties submit to the Court, not later than fifteen calendar days from the entry of this Order, a proposed order to direct to the members of the Class II, benefits class, that is "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort," pursuant to Fed. R.Civ.P. 23(c).